IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOT DEAD YET MANUFACTURING, INC., d/b/a NDY MFG, INC., | CASE NO. 13-cv-3418 |
| Plaintiff, | Judge Rebecca R. Pallmeyer |
| v. | **SECOND AMENDED COMPLAINT** |
| PRIDE SOLUTIONS, LLC and MAY WES MANUFACTURING, | |
| Defendants. | |

**THE PARTIES**

1. Plaintiff, Not Dead Yet Manufacturing, Inc. d/b/a NDY MFG, Inc., is an Illinois corporation having its principal place of business at 4590 N. 11000 W. Road, Bonfield, IL 60913.

2. Upon information and belief, Defendant, Pride Solutions, LLC, is a company organized under the laws of Minnesota and has registered office address of 16057 673rd Ave, Hutchinson, MN 55350, and a principal place of business at 120 Eastgate Drive SE, Hutchinson, MN 55350.

3. Upon information and belief, May Wes Manufacturing is a division of Defendant, Pride Solutions, LLC, is a company organized under the laws of Minnesota, and has a principal place of business at 120 Eastgate Drive SE, Hutchinson, MN 55350.

**JURISDICTION AND VENUE**

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 et seq.

5. This Court has subject matter jurisdiction over the patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338.

6. This is further an action for false advertising arising under Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a).

7. This Court has subject matter jurisdiction over the Lanham Act false advertising action pursuant to 28 U.S.C. §§ 1331.

8. This is further an action for false advertising and unfair competition under Illinois state law pursuant to the Uniform Deceptive Trade Practices Act, 815 ILCS § 510, and the Illinois Consumer Fraud Act, 815 ILCS § 505/2.

9. This Court has subject matter jurisdiction over the Illinois state law claims for false advertising and unfair competition pursuant to 35 U.S.C. § 1367(a).

10. This Court has personal jurisdiction over each of the defendants under 735 ILCS §2-209 for at least the reason that the defendants have conducted business within Illinois and have committed tortious acts in Illinois.

11. This Court has personal jurisdiction over each of the defendants by virtue of the fact that defendants filed an Answer and Counterclaims in this matter. Doc. 17.

12. Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND FACTS

13. Kenneth E. Shoup is the president of plaintiff, and established plaintiff on March 9, 2010.

14. Mr. Shoup is a named inventor on over 20 issued U.S. patents and numerous patent applications related to agricultural equipment.

15. Plaintiff is in the business of designing, manufacturing, and selling equipment related to agricultural products, including, but not limited to planting and harvesting machinery.

16. At least as early as July 2010, Mr. Shoup conceived of and commenced designing a quick connect and disconnect coupling for stalk stompers.

17. By at least July 16, 2010, Mr. Shoup reduced his concept to practice.

18. On or about August 14, 2010 plaintiff first publicly displayed a quick connect and disconnect coupling for stalk stompers in accordance with his concept.

19. On or about March 9, 2011, Mr. Daryl Peterson contacted plaintiff via telephone at its Bonfield, Illinois office and purchased two of plaintiff's stalk stompers with the quick connect and disconnect coupling. An invoice for the purchase is attached as Exhibit A.

20. On information and belief, Mr. Peterson was, at the time of the purchase, an employee of defendant Pride Solutions LLC.

21. On information and belief, Mr. Peterson was, at the time of the purchase, the sales manager for defendant Pride Solutions LLC.

22. Mr. Peterson did not inform plaintiff at the time of the purchase that he was an employee of or affiliated with either Pride Solutions LLC or May Wes Manufacturing.

23. On information and belief, Mr. Peterson was acting on authority from Pride Solutions LLC in contacting plaintiff and purchasing plaintiff's stalk stomper with a quick connect and disconnect coupling.

24. On information and belief, at the time of Mr. Peterson's purchase from plaintiff of plaintiff's quick disconnect stalk stompers, Pride Solutions LLC was not selling or had not sold a stalk stomper with a quick disconnect coupling.

25. On information and belief, at the time of Mr. Peterson's purchase from plaintiff of plaintiff's stalk stompers, Pride Solutions LLC had not completed the design for the quick disconnect stalk stomper that it currently sells and offers for sale.

26. On information and belief, Mr. Peterson or other persons associated with Pride Solutions LLC studied plaintiff's stalk stomper with a quick connect and disconnect coupling that Mr. Peterson had purchased from plaintiff.

27.     On information and belief, persons associated with Pride Solutions LLC adopted features from plaintiff's stalk stomper with a quick connect and disconnect coupling in Pride Solutions LLC's quick disconnect stalk stomper.

28.     On information and belief, Pride Solutions LLC completed its design for the quick connect stalk stomper that it is currently selling after persons associated with Pride Solutions LLC studied plaintiff's stalk stomper.

29.     On information and belief, a Pride Solutions LLC employee first created drawings for the design for the quick disconnect stalk stomper that it currently sells and offers for sale on March 28, 2011, after Mr. Peterson's purchase of plaintiff's quick disconnect stalk stompers.

30.     On information and belief, a Pride Solutions LLC employee first created drawings of the design for the quick connect stalk stomper that it is currently selling on March 28, 2011, after persons associated with Pride Solutions LLC studied plaintiff's stalk stomper.

31.     On information and belief, Pride Solutions LLC ordered prototypes of its design for the quick connect stalk stomper that it is currently selling on March 29, 2011, after persons associated with Pride Solutions LLC studied plaintiff's stalk stomper.

32.     Several weeks after Mr. Peterson's purchase, Mr. Peterson contacted plaintiff seeking to return the stalk stomper with a quick connect and disconnect coupling that he had purchased from plaintiff.

33.     On or about June 15, 2011, Pride Solutions LLC first introduced to its customers a stalk stomper with a quick disconnect coupling.

34.     Prior to June 2011, Pride Solutions LLC had not introduced to its customers a stalk stomper with a quick disconnect coupling.

35.     In August 2011, Mr. Peterson showed and demonstrated its version of a stalk stomper

with a quick connect and disconnect coupling at the Farm Progress Show of 2011 in Decatur, Illinois.

36.     On information and belief, since August 2011 and continuing to present, representatives of Pride Solutions LLC have showed and demonstrated its stalk stomper with a quick connect and disconnect coupling in Illinois.

37.     On information and belief, defendants, through the May Wes Manufacturing division, have made, used, sold or offered for sale stalk stompers with a quick connect and disconnect coupling since at least August 2011 to the present in the United States, in Illinois, and in this District.

38.     On information and belief, defendants, through the May Wes Manufacturing division, are currently making, using, selling, or offering for sale stalk stompers with a quick connect and disconnect coupling including, but not limited products designated with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, in Illinois, and in this District.

39.     On information and belief, since at least August 2011 to present, defendants, through the May Wes Manufacturing division, have been inducing others to use stalk stompers with a quick connect and disconnect coupling including, but not limited products designated with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, in Illinois, and in this District.

40.     On information and belief, defendants, through the May Wes Manufacturing division, have been making, using, selling, and offering for sale replacement parts for stalk stompers with a quick connect and disconnect coupling including, but not limited products designated with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, in Illinois, and in this District.

41. On information and belief, defendants, through the May Wes Manufacturing division, have been making, using, selling, and offering for sale upgrade kids to convert existing stalk stompers to stalk stompers with a quick connect and disconnect coupling in the United States, in Illinois, and in this District.

42. Plaintiff and defendants are competitors in the market for customers of quick disconnect stalk stompers.

43. Defendants advertise their quick disconnect stalk stomper on the May Wes website at least at the url: www.maywes.com/stalk_stompers_combines. Exhibit B.

44. Information provided on defendants' website are for commercial purposes.

45. Defendants state that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS."

46. Defendants' statement that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS" is intended to influence customer purchasing decisions.

47. Defendants' statement that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS" is a false statement regarding defendants' quick disconnect stalk stompers.

48. Plaintiff's quick disconnect stalk stomper was available in the market prior to defendants' introduction of a quick disconnect stalk stomper to the market.

49. Plaintiff's quick disconnect stalk stomper was available in the market prior to defendants' first creation of a drawing of the design of the quick disconnect stalk stomper that defendants brought to market.

50. Plaintiff's quick disconnect stalk stomper was available in the market prior to defendants' first prototype of the quick disconnect stalk stomper that defendants later brought to market.

51. Defendants purchased Plaintiff's quick disconnect stalk stomper prior to Defendants' introduction of a quick disconnect stalk stomper to the market.

52. Defendants were aware when they introduced defendants' quick disconnect stalk stomper to the market that defendants' quick disconnect stalk stomper was not the first quick disconnect stalk stomper on the market.

53. Defendants willfully falsely stated that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS" with the intent to mislead, deceive or confuse consumers.

54. Defendants continue to willfully falsely state that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS" with the intent to mislead, deceive or confuse consumers.

**COUNT I - Patent Infringement of U.S. Patent No. 8,418,432**

55. Paragraphs 1-54 are incorporated herein by reference.

56. On or about July 19, 2011, Mr. Shoup caused a patent application directed to his concept of a quick connect and disconnect coupling for a stalk stomper to be filed with the U.S. Patent and Trademark Office.

57. On April 16, 2013, U.S. Patent No. 8,418,432, entitled "Quick Connect/Disconnect Coupling For A Stalk Stomper", was issued by the United States Patent and Trademark Office, and listed Kenneth E. Shoup as the Inventor. A true and correct copy of U.S. Patent No. 8,418,432 is attached as Exhibit C.

58. U.S. Patent No. 8,418,432 is currently owned by plaintiff by way of assignment.

59. As of at least April 20, 2013, plaintiff has marked the stalk stompers with a quick connect and disconnect coupling that it manufactures and sells with a label that provides notice of U.S. Patent No. 8,418,432.

60. Each of the stalk stompers with a quick connect and disconnect feature listed in paragraphs 38-40 infringes at least one claim of U.S. Patent No. 8,418,432, and is thus an Infringing Product.

61. Defendants are making, using, selling and offering for sale the Infringing Product in the United States.

62. Defendants specifically intend for and instruct purchasers of the Infringing Products to use same.

63. Defendants' upgrade kits convert existing stalk stompers to an Infringing Product.

64. Defendants instruct purchasers to install the upgrade kits to convert stalk stompers to an Infringing Product.

65. Defendants are directly infringing, contributing to the infringement, and inducing others to infringe U.S. Patent No. 8,418,432 in violation of 35 U.S.C. § 271.

66. Defendants' infringement of U.S. Patent No. 8,418,432 is willful.

67. Plaintiff has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of defendants' infringement of U.S. Patent No. 8,418,432.

## COUNT II – False Advertising
### (15 U.S.C. § 1125(a)(1); Lanham Act § 43(a)(1))

68. Paragraphs 1-67 are incorporated herein by reference.

69. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is literally false.

70. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is misleading.

71. Defendants intend for consumers to rely on defendants' statement that their quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS."

72. Defendants' quick disconnect stalk stompers were not the first quick disconnect stalk stompers available in the market.

73. At least plaintiff's quick disconnect stalk stompers was available in the market prior to defendants' introduction of defendants' quick disconnect stalk stomper to the market.

74. Defendants' statement that defendants' stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is likely to deceive consumers into believing that defendants were the first to offer a quick disconnect stalk stomper.

75. As a direct and proximate result of defendants' false and misleading statement, plaintiff has suffered and continues to suffer competitive harm.

76. As a direct and proximate result of defendants' false and misleading statement, defendants have been unjustly enriched.

### COUNT III – False Advertising
### Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2

77. Paragraphs 1-76 are incorporated herein by reference.

78. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is literally false.

79. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is misleading.

80. Defendants intend for consumers to rely on defendants' statement that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS."

81. Defendants' quick disconnect stalk stompers were not the first quick disconnect stalk stompers available in the market.

82. At least plaintiff's quick disconnect stalk stompers was available in the market prior to defendants' introduction of their quick disconnect stalk stomper.

83. Defendants' statement that defendants' stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is likely to deceive consumers into believing that defendants were the first to offer a quick disconnect stalk stomper.

84. As a direct and proximate result of defendants' false and misleading statement, plaintiff has suffered and continues to suffer competitive harm.

85. As a direct and proximate result of defendants' false and misleading statement, defendants have been unjustly enriched.

## COUNT IV
### Illinois Consumer Fraud And Deceptive Business Practices Act
### 815 ILCS 505 et seq.

86. Paragraphs 1-85 are incorporated herein by reference.

87. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is literally false.

88. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is misleading.

89. Defendants intend for consumers to rely on defendants' statement that their quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS."

90. Defendants' quick disconnect stalk stompers were not the first quick disconnect stalk stompers available in the market.

91. At least plaintiff's quick disconnect stalk stompers was available in the market prior to

Defendants' introduction of their quick disconnect stalk stomper.

92. Defendants' statement that defendants' stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is likely to deceive consumers into believing that defendants were the first to offer a quick disconnect stalk stomper.

93. As a direct and proximate result of defendants' false and misleading statement, plaintiff has suffered and continues to suffer competitive harm.

94. As a direct and proximate result of defendants' false and misleading statement, defendants have been unjustly enriched.

### COUNT V - Patent Infringement of U.S. Patent No. 8,745,963

95. Paragraphs 1-94 are incorporated herein by reference.

96. On June 10, 2014, U.S. Patent No. 8,745,963, entitled "Adjustable Angle Stalk Stomper With Torsion Spring ", was issued by the United States Patent and Trademark Office, and listed Kenneth E. Shoup as the Inventor. A true and correct copy of U.S. Patent No. 8,745,963 is attached as Exhibit D.

97. U.S. Patent No. 8,745,963 is currently owned by plaintiff by way of assignment.

98. As of at least June 10, 2014, plaintiff has marked the stalk stompers with a quick connect and disconnect coupling that it manufactures and sells with a label that provides notice of U.S. Patent No. 8,745,963.

99. Each of the stalk stompers with a quick connect and disconnect feature listed in paragraphs 38-40 infringes at least one claim of U.S. Patent No. 8,745,963, and is thus an Infringing Product.

100. Defendants are making, using, selling and offering for sale the Infringing Product in the United States.

101. Defendants specifically intend for and instruct purchasers of the Infringing Products to use same.

102. Defendants' upgrade kits convert existing stalk stompers to an Infringing Product.

103. Defendants instruct purchasers to install the upgrade kits to convert stalk stompers to an Infringing Product.

104. Defendants are directly infringing, contributing to the infringement, and inducing others to infringe U.S. Patent No. 8,745,963 in violation of 35 U.S.C. § 271.

105. Defendants have been aware of the claim pending in the patent application that matured into U.S. Patent No. 8,745,963 since as early as February 3, 2014.

106. Defendants' infringement of U.S. Patent No. 8,418,432 is willful.

107. Plaintiff has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of defendants' infringement of U.S. Patent No. 8,745,963.

WHEREFORE, Plaintiff requests that a judgment be entered against defendants Prime Solutions, LLC and May Wes Manufacturing:

A. Declaring that defendants have infringed at least one claim of U.S. Patent No. 8,418,432;

B. Declaring that defendants' infringement of U.S. Patent No. 8,418,432 is willful;

C. Enjoining defendants, its officers, employees, subsidiaries, agents, attorneys and all persons in active concert with them, from any further infringement of U.S. Patent No. 8,418,432;

D. Declaring that defendants have infringed at least one claim of U.S. Patent No. 8,745,963;

E. Declaring that defendants' infringement of U.S. Patent No. 8,745,963 is willful;

F. Enjoining defendants, its officers, employees, subsidiaries, agents, attorneys and all

persons in active concert with them, from any further infringement of U.S. Patent No. 8,745,963;

G.      Awarding damages, costs and interest to plaintiff under 35 U.S.C. §§ 284 and 154(d);

H.      Awarding up to treble damages upon a finding that defendants' infringement has been willful and wanton under 35 U.S.C. § 284;

I.      Declaring this case exceptional and awarding plaintiff its reasonable attorneys fees pursuant to 35 U.S.C. § 285;

J.      Awarding damages, costs and interest to plaintiff under 35 U.S.C. §§ 284 and 154(d);

K.      Awarding up to treble damages upon a finding that defendants' infringement has been willful and wanton under 35 U.S.C. § 284;

L.      Declaring this case exceptional and awarding plaintiff its reasonable attorneys fees pursuant to 35 U.S.C. § 285;

M.      Enjoining defendants, its officers, employees, subsidiaries, agents, attorneys and all persons in active concert with them, from continuing to use false and misleading claims in advertising;

N.      Awarding damages and other remedies as a result of defendants' false and misleading claim in advertising, including without limitation, plaintiff's lost profits, disgorgement of defendants' profits, costs and interest to plaintiff;

O.      Ordering defendants to render an accounting to ascertain the amount of defendants' profits;

P.      Declaring this case exceptional as a result of defendants' false and misleading claim in advertising and awarding plaintiff its reasonable attorneys fees; and

Q.      Awarding plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: June 24, 2014                By:   s/ Joseph M. Kuo
                                                 Joseph M. Kuo
                                                 Olson & Cepuritis, Ltd.
                                                 20 North Wacker Drive, 36th Floor
                                                 Chicago, IL 60606-3181
                                                 Tel. (312) 580-1180
                                                 Fax (312) 580-1189
                                                 jkuo@olsonip.com

                                                 Attorney for Plaintiff
                                                 NOT DEAD YET MANUFACTURING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Dustin R. DuFault
>DuFault Law Firm, P.C.
>Ten South Fifth Street
>700 Lumber Exchange Building
>Minneapolis, MN 55402
>Tel.: (952) 935-4392
>Dustin@DuFault-Law.com
>
>Tawfiq Ali
>Ali Law Practice, LLC
>200 East Randolph Street
>Suite 5100-24
>Chicago, IL 60601
>Tel.: (312) 970-1847
>Tali@alilawpractice.com
>
>Craige O. Thompson
>Thompson Patent Law Offices, PC
>4900 Place
>4900 Highway 169 North
>Suite 315
>New Hope, MN 55428
>Tel.: (763) 557-4909
>craige@thompsonpatentlaw.com
>
>Attorneys for Defendants
>PRIDE SOLUTIONS, LLC and
>MAY WES MANUFACTURING

                              /s/ Joseph M. Kuo