**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Not Dead Yet Manufacturing, Inc., | |
| Plaintiff, | No: 13-cv-3418 |
| v. | |
| Pride Solutions, LLC, and May Wes Manufacturing, | Hon. Rebecca R. Pallmeyer |
| Defendants. | |

**FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS OF
DEFENDANTS PRIDE SOLUTIONS LLC AND MAY WES MANUFACTURING TO
PLAINTIFF'S SECOND AMENDED COMPLAINT AT LAW**

Defendants Pride Solutions LLC and May Wes Manufacturing (collectively, "Pride"), by and through counsel, answer the Second Amended Complaint filed by Plaintiff Not Dead Yet Manufacturing, Inc. ("NDY") in the above-captioned matter as follows. Under Federal Rule of Civil Procedure 8(b)(3), all complaint allegations are denied except those specifically admitted.

**RESPONSES TO SPECIFIC ALLEGATIONS**

1. Plaintiff, Not Dead Yet Manufacturing, Inc. d/b/a NDY MFG, Inc., is an Illinois corporation having its principal place of business at 4590 N. 11000 W. Road, Bonfield, IL 60913.

**ANSWER:** Pride admits that Plaintiff Not Dead Yet Manufacturing, Inc. d/b/a NDY MFG, Inc., is an Illinois corporation. Pride lacks knowledge or information sufficient to form a belief about the truth of the remainder of Paragraph 1.

2. Upon information and belief, Defendant, Pride Solutions, LLC, is a company organized under the laws of Minnesota and has registered [*sic*] office address of 16057 673rd Ave, Hutchinson, MN 55350, and a principal place of business at 120 Eastgate Drive SE, Hutchinson, MN 55350.

**ANSWER:** Pride admits the allegations of Paragraph 2.

3. Upon information and belief, May Wes Manufacturing is a division of Defendant, Pride Solutions, LLC, is a company organized under the laws of Minnesota, and has a principal place of business at 120 Eastgate Drive SE, Hutchinson, MN 55350.

**ANSWER:** Pride admits that May Wes Manufacturing is a division of Pride

Solutions LLC and has a principal place of business at 120 Eastgate Drive SE,

Hutchinson, MN 55350. Further, May-Wes Mfg. is a registered assumed name held by

Pride Solutions LLC. Pride denies the remainder of Paragraph 3.

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 et seq.

**ANSWER:** Pride admits that NDY is suing for patent infringement, but denies

that NDY's suit has any merit whatsoever.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

**ANSWER:** Pride admits that the Court has subject -matter jurisdiction. Pride

denies that NDY's suit has any merit whatsoever.

6. This is further an action for false advertising arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:** Pride admits that NDY is suing for false advertising, but denies that

NDY's suit has any merit whatsoever.

2

7.  This Court has subject matter jurisdiction over the Lanham Act false
    advertising action pursuant to 28 U.S.C. §§ 1331.

**ANSWER:** Pride admits that the Court has subject -matter jurisdiction. Pride

denies that NDY's suit has any merit whatsoever.


8.  This is further an action for false advertising and unfair competition under
    Illinois state law pursuant to Uniform Deceptive Trade Practices Act, 815
    ILCS § 505/2.

**ANSWER:** Pride admits that NDY is suing for false advertising and unfair

competition, but denies that NDY's suit has any merit whatsoever.


9.  This Court has subject matter jurisdiction over the Illinois state law claims for
    false advertising and unfair competition pursuant to 35 U.S.C. § 1367(a).

**ANSWER:** Pride is unaware of any jurisdictional statute under 35 U.S.C. §

1367(a) and therefore denies the same. Pride denies that NDY's suit has any merit

whatsoever.


10. This Court has personal jurisdiction over each of the defendants under 735
    ILCS § 2-209 for at least the reason that each of the defendants has conducted
    business within Illinois and have committed tortious acts in Illinois.

**ANSWER:** Pride does not contest personal jurisdiction in this action but

otherwise denies the allegations of Paragraph 10. Pride denies that NDY's suit has any

merit whatsoever.


11. This Court has personal jurisdiction over each of the defendants by virtue of
    the fact that defendants filed an Answer and Counterclaims in this matter.
    Doc. 17.

**ANSWER:** Pride does not contest personal jurisdiction in this action but

otherwise denies the allegations of Paragraph 10. Pride denies that NDY's suit has any merit whatsoever.

12. Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b).

**ANSWER:** Pride admits that venue is proper in this District under 28 U.S.C. § 1391 but denies that it is proper under § 1400(b). Pride denies that NDY's suit has any merit whatsoever.

13. Kenneth E. Shoup is the president of plaintiff, and established plaintiff on March 9, 2010.

**ANSWER:** Pride lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13 and therefore denies the same.

14. Mr. Shoup is a named inventor on over 20 issued U.S. patents and numerous patent applications related to agricultural equipment.

**ANSWER:** Pride lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14 and therefore denies the same.

15. Plaintiff is in the business of designing, manufacturing, and selling equipment related to agricultural products, including, but not limited to planting and harvesting machinery.

**ANSWER:** Pride is aware that NDY sells stalk stompers but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 15 and therefore denies the same.

16. At least as early as July 2010, Mr. Shoup conceived of and commenced designing a quick connect and disconnect coupling for stalk stompers.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and

4

requires a legal interpretation. To the extent a response is required, Pride lacks

knowledge or information sufficient to form a belief about the truth of the allegations of

Paragraph 16 and therefore denies the same.

17. By at least July 16, 2010, Mr. Shoup reduced his concept to practice.

**ANSWER:** Pride lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 17 and therefore denies the same.

18. On or about August 14, 2010 plaintiff first publicly displayed a quick connect and disconnect coupling for stalk stompers in accordance with his concept.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and

requires a legal interpretation. To the extent a response is required, Pride lacks

knowledge or information sufficient to form a belief about the truth of the allegations of

Paragraph 18 and therefore denies the same.

19. On or about March 9, 2011, Mr. Daryl Peterson contacted plaintiff via telephone at its Bonfield, Illinois office, and purchased two of plaintiff's stalk stompers with the quick connect and disconnect coupling. An invoice for the purchase is attached as Exhibit A.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and

requires a legal interpretation. To the extent a response is required, Pride admits that on

or about March 9, 2011, Daryl Peterson contacted NDY (or a party related to NDY) via

telephone and purchased two stalk stompers. Pride otherwise lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of

Paragraph 19 and therefore denies.

5

20. On information and belief, Mr. Peterson was, at the time of the purchase, an employee of defendant Pride Solutions.

**ANSWER:** Pride admits the allegations of Paragraph 20.

21. On information and belief, Mr. Peterson was at the time of purchase, the sales manager for defendant Pride Solutions LLC.

**ANSWER:** Pride admits the allegations of Paragraph 21.

22. Mr. Peterson did not inform plaintiff that he was an employee of or affiliated with defendant May Wes.

**ANSWER:** Pride admits the allegations of Paragraph 22.

23. On information and belief, Mr. Peterson was acting on authority from Pride Solutions LLC in contacting plaintiff and purchasing plaintiff's stalk stomper with a quick connect and disconnect coupling.

**ANSWER:** "Quick connect and disconnect coupling" and "acting on authority from" are vague or ambiguous and require legal interpretations. To the extent a response is required, Pride admits that Daryl Peterson was authorized by Pride to purchase stalk stompers from NDY, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 23 and therefore denies the same.

24. On information and belief, at the time of Mr. Peterson's purchase from plaintiff, Pride Solutions LLC was not selling or had not sold a stalk stomper with a quick connect and disconnect coupling.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and requires a legal interpretation. To the extent a response is required, Pride denies the allegations of Paragraph 24.

6

25. On information and belief, at the time of Mr. Peterson's purchase from plaintiff of plaintiff's stalk stompers, Pride Solutions LLC had not completed the design for the quick disconnect stalk stomper that it currently sells and offers for sale.

**ANSWER:** "Quick disconnect stalk stomper" is vague or ambiguous and requires a legal interpretation. To the extent a response is required, Pride denies the allegations of Paragraph 25.

26. On information and belief, Mr. Peterson or other persons associated with Pride Solutions LLC studied plaintiff's stalk stomper with a quick connect and disconnect coupling that Mr. Peterson had purchased from plaintiff.

**ANSWER:** "Studied" and "quick connect and disconnect coupling" are vague or ambiguous, and the latter requires a legal interpretation. To the extent a response is required, Pride admits that it reviewed stalk stompers purchased by Daryl Peterson from NDY for market-analysis purposes, but otherwise denies the allegations of Paragraph 26.

27. On information and belief, persons associated with Pride Solutions LLC adopted features from plaintiff's stalk stomper with a quick connect and disconnect coupling in Pride Solutions LLC's quick disconnect stalk stomper.

**ANSWER:** Denied.

28. On information and belief, Pride Solutions LLC completed its design for the quick connect stalk stomper that it is currently selling after persons associated with Pride Solutions LLC studied plaintiff's stalk stomper.

**ANSWER:** Denied.

29. On information and belief, a Pride Solutions LLC employee created drawings for the design for the quick disconnect stalk stomper that it currently sells and offers for sale on March 28, 2011, after Mr. Peterson's purchase of plaintiff's quick disconnect stalk stompers.

**ANSWER:** Denied.

30. On information and belief, a Pride Solutions LLC employee first created drawings of the design for the quick connect stalk stomper that it is currently selling on march 28, 2011, after person associated with Pride Solutions LLC studied plaintiff's stalk stomper.

**ANSWER:** Denied.

31. On information and belief, a Pride Solutions LLC ordered prototypes of its design for the quick connect stalk stomper that it is currently selling on March 29, 2011, after persons associated with Pride Solutions LLC studied plaintiff's stalk stomper.

**ANSWER:** Denied.

32. Several weeks after Mr. Peterson's purchase, Mr. Peterson contacted plaintiff seeking to return the stalk stomper with a quick connect and disconnect coupling that he had purchased from plaintiff.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and requires a legal interpretation. To the extent a response is required, Pride admits that Daryl Peterson initially sought to return purchased stalk stompers from NDY. However, the stalk stompers were never actually returned.

33. On or about June 15, 2011, Pride Solutions LLC first introduced to its customers a stalk stomper with a quick disconnect coupling.

**ANSWER:** "Quick disconnect coupling" is vague or ambiguous and requires a legal interpretation. To the extent a response is required, Pride states that it introduced a new line of stalk stompers at least as early as June 2011, and again in June 2014, but otherwise denies the allegations of Paragraph 33.

8

34. Prior to June 2011, Pride Solutions LLC had not introduced to its customers a stalk stomper with a quick disconnect coupling.

**ANSWER:** "Quick disconnect coupling" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride states that it introduced a new line of stalk stompers at least as early as June 2011, and again in June 2014, but otherwise denies the allegations of Paragraph 34.

35. In August 2011, Mr. Peterson showed and demonstrated its version of a stalk stomper with a quick connect and disconnect coupling at the Farm Progress Show of 2011 in Decatur, Illinois.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride admits that in August 2011, Daryl Peterson showed and demonstrated a May Wes stalk stomper at the Farm Progress Show of 2011 in Decatur, Illinois, but otherwise denies the allegations of Paragraph 35.

36. On information and belief, since August 2011 and continuing to present, representatives of Pride Solutions LLC have showed and demonstrated its stalk stomper with a quick connect and disconnect coupling in Illinois.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride states that at times since at least August 2011, representatives of Pride have showed and demonstrated its stalk stomper products in Illinois, but otherwise denies the allegations of Paragraph 36.

37. On information and belief, defendants, through the May Wes division, have made, used, sold or offered for sale stalk stompers with a quick connect and

disconnect coupling since at least August 2011 to the present in the United States, in Illinois, and in this District.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride states that at times since at least August 2011, representatives of Pride have made, used, sold or offered for sale stalk stompers in the United States, in Illinois, and in this District, but otherwise denies the allegations of Paragraph 37.

38. On information and belief, defendants, through the May Wes division, are currently making, using, selling, or offering for sale stalk stompers with a quick connect and disconnect coupling including, but not limited those [*sic*] designated with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, in Illinois, and in this District.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride states that at times since at least August 2011, representatives of Pride have made, used, sold or offered for sale stalk stompers with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, and that those part numbers likely have been sold or offered for sale in Illinois or this District. Pride otherwise denies the allegations of Paragraph 38.

39. On information and belief, since at least August 2011 to present, defendants, through the May Wes division, have been inducing others to use stalk stompers with a quick connect and disconnect coupling including, but not limited products [*sic*] designated with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, in Illinois, and in this District.

**ANSWER:** "Quick connect and disconnect coupling" and "inducing" are vague or ambiguous and call for legal interpretations. To the extent a response is required,

Pride states that it has sold or offered for sale stalk stompers with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 to customers in the United States, and that those part numbers likely have been sold or offered for sale to customers in Illinois or this District. Pride otherwise denies the allegations of Paragraph 39.

40. On information and belief, defendants, through the May Wes division, have been making, using, selling, and offering for sale replacement parts for stalk stompers with a quick connect and disconnect coupling including, but not limited those [*sic*] designated with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, in Illinois, and in this District.

**ANSWER:** "Quick connect and disconnect coupling" and "replacement parts" are vague or ambiguous and call for legal interpretations. To the extent a response is required, Pride admits that it has made, used, sold or offered for sale repair parts for stalk stompers with part numbers 83308, 83020, 83022, 41830, 83322, and 83323 in the United States, and likely sold or offered for sale repair parts to customers in Illinois and this District. Pride otherwise denies the allegations of Paragraph 40.

41. On information and belief, defendants, through the May Wes division, have been making, using, selling, and offering for sale upgrade kids [*sic*] to convert existing stalk stompers to stalk stompers with a quick connect and disconnect coupling in the United States, in Illinois, and in this District.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride states that it has made, used, sold, or offered for sale upgrade kits for its stalk stompers in the United States, in Illinois, and in this District, but otherwise denies the allegations of Paragraph 41.

11

42. Plaintiff and defendants are competitors in the market for customers of quick disconnect stalk stompers.

**ANSWER:** Pride lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 42 and therefore denies the same.

43. Defendants advertise their quick disconnect stalk stomper on the May Wes website at least the url: www.maywes.com/stalk_stompers_combines.

**ANSWER:** Denied.

44. Information provided on defendants' website are for commercial purposes.

**ANSWER:** "Defendants' website" is vague or ambiguous as it is not clear what website is being referred to. To the extent a response is required, Pride states that it does maintain internet websites promoting its goods for commercial purposes, but otherwise denies the allegations of Paragraph 44.

45. Defendants state that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS."

**ANSWER:** Denied.

46. Defendants' statement that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS" is intended to influence customer purchasing decisions.

**ANSWER:** Denied.

47. Defendants' statement that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK

12

DISCONNECT STALK STOMPERS" is a false statement regarding defendants' quick disconnect stalk stompers.

**ANSWER:** Denied.

48. Plaintiff's quick disconnect stalk stomper was available in the market prior to defendants' introduction of a quick disconnect stalk stomper to the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride states that it introduced a new line of stalk stompers at least as early as June 2011, and again in June 2014, but otherwise denies the allegations of Paragraph 48.

49. Plaintiff's quick disconnect stalk stomper was available in the market prior to defendants' first creation of a drawing of the design of the quick disconnect stalk stomper that defendants brought to market.

**ANSWER:** Denied.

50. Plaintiff's quick disconnect stalk stomper was available in the market prior to defendants' first prototype of the quick disconnect stalk stomper that defendants later brought to market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride states that it introduced a new line of stalk stompers at least as early as June 2011, and again in June 2014, but otherwise denies the allegations of Paragraph 50.

51. Defendants purchased Plaintiff's quick disconnect stalk stomper prior to Defendants' introduction of a quick disconnect stalk stomper to the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal

13

interpretation. To the extent a response is required, Pride states that it introduced a new

line of stalk stompers at least as early as June 2011, and again in June 2014, but

otherwise denies the allegations of Paragraph 51.

52. Defendants were aware when they introduced defendants' quick disconnect stalk stomper to the market that defendants' quick disconnect stalk stomper was not the first quick disconnect stalk stomper on the market.

**ANSWER:** Denied.

53. Defendants willfully falsely stated that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STMPERS" with the intent to mislead, deceive or confuse consumers.

**ANSWER:** Denied.

54. Defendants continue to willfully falsely state that the quick disconnect stalk stompers shown at www.maywes.com/stalk_stompers_combines are "The Original QUICK DISCONNECT STALK STOMPERS" with the intent to mislead, deceive or confuse consumers.

**ANSWER:** Denied.

55. Paragraphs 1-54 are incorporated herein by reference.

**ANSWER:** Pride's responses to Paragraphs 1-54 are incorporated herein by

reference.

56. On or about July 19, 2011, Mr. Shoup caused a patent application directed to his concept of a quick connect and disconnect coupling for a stalk stomper to be filed with the U.S. Patent and Trademark Office.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and

14

calls for a legal interpretation. To the extent a response is required, Pride lacks

knowledge or information sufficient to form a belief about the truth of the allegations of

Paragraph 56, and therefore denies the same.

> 57. On April 16, 2013, U.S. Patent No. 8,418,432, entitled "Quick
> Connect/Disconnect Coupling For A Stalk Stomper", was issued by the
> United States Patent and Trademark Office, and listed Kenneth E. Shoup as
> the Inventor. A true and correct copy of U.S. Patent No. 8,418,432 is attached
> as Exhibit C.

**ANSWER:** Pride admits the allegations of Paragraph 57. Pride denies that the

referenced patent is valid.

> 58. U.S. Patent No. 8,418,432 is currently owned by plaintiff by way of
> assignment.

**ANSWER:** Pride lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 58, and therefore denies the same.

> 59. As of at least April 20, 2013, Plaintiff has marked the stalk stompers with a
> quick connect and disconnect coupling that it manufactures and sells with a
> label that provides notice of U.S. Patent No. 8,418,432.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and

calls for a legal interpretation. To the extent a response is required, Pride lacks

knowledge or information sufficient to form a belief about the truth of the allegations of

Paragraph 59, and therefore denies the same.

> 60. Each of the stalk stompers with a quick connect and disconnect feature listed
> in paragraphs 38-40 infringes at least one claim of U.S. Patent No. 8,418,432,
> and is thus an Infringing Product.

**ANSWER:** Denied.

15

61. Defendants are making, using, selling and offering for sale the Infringing Product in the United States.

**ANSWER:** Denied.

62. Defendants specifically intend for and instruct purchasers of the Infringing Products to use same.

**ANSWER:** Denied.

63. Defendants' upgrade kits convert existing stalk stompers to an Infringing Product.

**ANSWER:** Denied.

64. Defendants instruct purchasers to install the upgrade kits to convert stalk stompers to an Infringing Product.

**ANSWER:** Denied.

65. Defendants are directly infringing, contributing to the infringement, and inducing others to infringe U.S. Patent No. 8,418,432 in violation of 35 U.S.C. § 271.

**ANSWER:** Denied.

66. Defendants' infringement of U.S. Patent No. 8,418,432 is willful.

**ANSWER:** Denied.

67. Plaintiff has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of defendants' infringement of U.S. Patent No. 8,418,432.

**ANSWER:** Denied.

68. Paragraphs 1-67 are incorporated herein by reference.

**ANSWER:** Pride's responses to Paragraphs 1-67 are incorporated herein by reference.

69. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is literally false.

**ANSWER:** Denied.

70. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is misleading.

**ANSWER:** Denied.

71. Defendants intent for consumers to rely on defendants' statement that their quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS."

**ANSWER:** Denied.

72. Defendants' quick disconnect stalk stompers were not the first quick disconnect stalk stompers available on the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 72, and therefore denies the same.

73. At least plaintiff's quick disconnect stalk stompers was *[sic]* available in the market prior to defendants' introduction of defendants' quick disconnect stalk stomper to the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride lacks knowledge or

information sufficient to form a belief about the truth of the allegations of Paragraph 73,

and therefore denies the same.

74. Defendants' statement that defendants' stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is likely to deceive consumers into believing that defendants were the first to offer a quick disconnect stalk stomper.

**ANSWER:** Denied.

75. As a direct and proximate result of defendants' false and misleading statement, plaintiff has suffered and continues to suffer competitive harm.

**ANSWER:** Denied.

76. As a direct and proximate result of defendants' false and misleading statement, defendants have been unjustly enriched.

**ANSWER:** Denied.

77. Paragraphs 1-76 are incorporated herein by reference.

**ANSWER:** Pride's responses to Paragraphs 1-76 are incorporated herein by

reference.

78. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is literally false.

**ANSWER:** Denied.

79. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is misleading.

**ANSWER:** Denied.

80. Defendants intend for consumers to rely on defendants' statement that

defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS."

**ANSWER:** Denied.

81. Defendants' quick disconnect stalk stompers were not the first quick disconnect stalk stompers available on the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 81, and therefore denies the same.

82. At least plaintiff's quick disconnect stalk stompers was *[sic]* available in the market prior to defendants' introduction of defendants' quick disconnect stalk stomper to the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 82, and therefore denies the same.

83. Defendants' statement that defendants' stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is likely to deceive consumers into believing that defendants were the first to offer a quick disconnect stalk stomper.

**ANSWER:** Denied.

84. As a direct and proximate result of defendants' false and misleading statement, plaintiff has suffered and continues to suffer competitive harm.

**ANSWER:** Denied.

19

85. As a direct and proximate result of defendants' false and misleading statement, defendants have been unjustly enriched.

**ANSWER:** Denied.

86. Paragraphs 1-85 are incorporated herein by reference.

**ANSWER:** Pride's responses to Paragraphs 1-85 are incorporated herein by reference.

87. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is literally false.

**ANSWER:** Denied.

88. Defendants' statement in its advertising that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is misleading.

**ANSWER:** Denied.

89. Defendants intend for consumers to rely on defendants' statement that defendants' quick disconnect stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS."

**ANSWER:** Denied.

90. Defendants' quick disconnect stalk stompers were not the first quick disconnect stalk stompers available on the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride lacks knowledge or

information sufficient to form a belief about the truth of the allegations of Paragraph 90, and therefore denies the same.

> 91. At least plaintiff's quick disconnect stalk stompers was *[sic]* available in the market prior to defendants' introduction of defendants' quick disconnect stalk stomper to the market.

**ANSWER:** "Quick disconnect" is vague or ambiguous and calls for a legal interpretation. To the extent a response is required, Pride lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 91, and therefore denies the same.

> 92. Defendants' statement that defendants' stalk stompers are "The Original QUICK DISCONNECT STALK STOMPERS" is likely to deceive consumers into believing that defendants were the first to offer a quick disconnect stalk stomper.

**ANSWER:** Denied.

> 93. As a direct and proximate result of defendants' false and misleading statement, plaintiff has suffered and continues to suffer competitive harm.

**ANSWER:** Denied.

> 94. As a direct and proximate result of defendants' false and misleading statement, defendants have been unjustly enriched.

**Answer:** Denied.

> 95. Paragraphs 1-94 are incorporated herein by reference.

**ANSWER:** Pride's responses to Paragraphs 1-94 are incorporated herein by

reference.

96. On June 10, 2014, U.S. Patent No. 8,745,963, entitled "Adjustable Angle Stalk Stomper With Torsion Spring", was issued by the United States Patent and Trademark Office, and listed Kenneth E. Shoup as the Inventor. A true and correct copy of U.S. Patent No. 8,745,963 is attached as Exhibit D.

**ANSWER:** Pride admits the allegations of Paragraph 96. Pride denies that the

referenced patent is valid.

97. U.S. Patent No. 8,745,963 is currently owned by plaintiff by way of assignment.

**ANSWER:** Pride lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 97, and therefore denies the same.

98. As of at least June 10, 2014, Plaintiff has marked the stalk stompers with a quick connect and disconnect coupling that it manufactures and sells with a label that provides notice of U.S. Patent No. 8,418,432.

**ANSWER:** "Quick connect and disconnect coupling" is vague or ambiguous and

calls for a legal interpretation. To the extent a response is required, Pride lacks

knowledge or information sufficient to form a belief about the truth of the allegations of

Paragraph 98, and therefore denies the same.

99. Each of the stalk stompers with a quick connect and disconnect feature listed in paragraphs 38-40 infringes at least one claim of U.S. Patent No. 8,745,963, and is thus an Infringing Product.

**ANSWER:** Denied.

100. Defendants are making, using, selling and offering for sale the Infringing Product in the United States.

**ANSWER:** Denied.

22

101.    Defendants specifically intend for and instruct purchasers of the Infringing Products to use same.

**ANSWER:** Denied.


102.    Defendants' upgrade kits convert existing stalk stompers to an Infringing Product.

**ANSWER:** Denied.


103.    Defendants instruct purchasers to install the upgrade kits to convert stalk stompers to an Infringing Product.

**ANSWER:** Denied.


104.    Defendants are directly infringing, contributing to the infringement, and inducing others to infringe U.S. Patent No. 8,745,963 in violation of 35 U.S.C. § 271.

**ANSWER:** Denied.


105.    Defendants have been aware of the claim pending in the patent application that matured into U.S. Patent No. 8,745,963 since as early as February 3, 2014.

**ANSWER:** Denied.


106.    Defendants' infringement of U.S. Patent No. 8,745,963 is willful.

**ANSWER:** Denied.


107.    Plaintiff has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of defendants' infringement of U.S. Patent No. 8,745,963.

**ANSWER:** Denied.

WHEREFORE, Pride requests that the Court (a) dismiss NDY's complaint with prejudice as to all purported claims; (b) enter judgment against NDY in favor of Pride, (c) award NDY no relief whatsoever; (d) award Pride the assessable costs of defending this action; (e) declare this case exceptional and hold Pride to be the prevailing party, and award Pride its reasonable attorney fees under 35 U.S.C. § 285; and (f) award Pride such other relief to which the Court deems just and proper.

## SEPARATE AND AFFIRMATIVE DEFENSES

Pride alleges and asserts, separately and in the alternative, the following defenses in response to the allegations. Pride undertakes the burden of proof only as to those defenses as required by law, regardless of how such defenses are denominated herein. Pride specifically reserves all rights to allege additional defenses that become known or determined.

**First Defense:** U.S. Patent No. 8,418,432, and each of its purported claims, is invalid, void and/or unenforceable, as set forth in the Second Counterclaim for Relief below, including without limitation for failing to meet the conditions of patentability set forth under the patent laws, 35 U.S.C. §§ 1 *et seq.,* including:

   a) The claimed subject matter of U.S. Patent No. 8,418,432 was known
      and used by others in this country or patented or described in a
      printed publication this or a foreign country before the alleged
      inventions thereof.

24

b) The claimed subject matter of U.S. Patent No. 8,418,432 was patented or described in a printed publication in this or a foreign country, or in public use or on sale in this country more than one year prior to the effective filing dates of the applications on which the patents-in-suite issued.

c) The named inventor did not himself invent the claimed subject matter of U.S. Patent No. 8,418,432.

d) Before the making of the alleged invention by the named inventor of U.S. Patent No. 8,418,432, the invention was made in this country by another who had not abandoned, suppressed, or concealed it.

e) The claimed subject matter of U.S. Patent No. 8,418,432 was or would have been obvious to a person having ordinary skill in the art to which the subject matter pertained at the time the alleged invention was made.

f) An improper oath or declaration was filed in the application resulting in U.S. Patent No. 8,418,432.

g) U.S. Patent No. 8,418,432 and each of its purported claims is invalid because the purported invention is obvious under 35 U.S.C. § 103.

h) The descriptions contained in U.S. Patent No. 8,418,432 and a disclosure of the alleged invention or improvement, in the claims thereof, are vague, indefinite, incomplete and not in such full, clear,

concise and exact terms as to enable a person skilled in the art to use and practice the alleged invention or improvements, and each of its purported claims is invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112.

i) U.S. Patent No. 8,418,432 and each of its purported claims is invalid for indefiniteness under 35 U.S.C. § 112.

j) By reasons or representations made in proceedings which took place in the United States Patent & Trademark Office during the prosecution of the application which matured into U.S. Patent No. 8,418,432, NDY is estopped to assert any construction of the claims therein which would read on any product or service of Pride.

k) The alleged invention(s) claimed in U.S. Patent No. 8,418,432 is merely an aggregation or an existing combination such that the several elements and features claimed were individually known to person skilled in the art and analogous arts, and the claimed accumulations and use of such elements and features did not produce a new or different function, characteristic or method and the effect produced by the claimed combinations was not greater than the sum of the several effects of the combined parts taken separately.

l) U.S. Patent No. 8,418,432 and each of its purported claims is invalid because NDY's purported invention is not a true invention.

m) U.S. Patent No. 8,418,432 and each of its purported claims is invalid under 35 U.S.C. § 102 because NDY's first public disclosure, offer for sale or selling of its quick connect and disconnect coupling for stalk stompers was more than one year before the effective filing date of the patent.

**Second Defense:** U.S. Patent No. 8,745,963, and each of its purported claims, is invalid, void and/or unenforceable, as set forth in the Second Counterclaim for Relief below, including without limitation for failing to meet the conditions of patentability set forth under the patent laws, 35 U.S.C. §§ 1 *et seq.,* including:

a) The claimed subject matter of U.S. Patent No. 8,745,963 was known and used by others in this country or patented or described in a printed publication this or a foreign country before the alleged inventions thereof.

b) The claimed subject matter of U.S. Patent No. 8,745,963 was patented or described in a printed publication in this or a foreign country, or in public use or on sale in this country more than one year prior to the effective filing dates of the applications on which the patents-in-suite issued.

c) The named inventor did not himself invent the claimed subject matter of U.S. Patent No. 8,745,963.

d) Before the making of the alleged invention by the named inventor of

27

U.S. Patent No. 8,745,963, the invention was made in this country by another who had not abandoned, suppressed, or concealed it.

e)  The claimed subject matter of U.S. Patent No. 8,745,963 was or would have been obvious to a person having ordinary skill in the art to which the subject matter pertained at the time the alleged invention was made.

f)  An improper oath or declaration was filed in the application resulting in U.S. Patent No. 8,745,963.

g)  U.S. Patent No. 8,745,963 and each of its purported claims is invalid because the purported invention is obvious under 35 U.S.C. § 103.

h)  The descriptions contained in U.S. Patent No. 8,745,963 and a disclosure of the alleged invention or improvement, in the claims thereof, are vague, indefinite, incomplete and not in such full, clear, concise and exact terms as to enable a person skilled in the art to use and practice the alleged invention or improvements, and each of its purported claims is invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112.

i)  U.S. Patent No. 8,745,963 and each of its purported claims is invalid for indefiniteness under 35 U.S.C. § 112.

j)  By reasons or representations made in proceedings which took place in the United States Patent & Trademark Office during the prosecution of

28

the application which matured into U.S. Patent No. 8,745,963, NDY is estopped to assert any construction of the claims therein which would read on any product or service of Pride.

k) The alleged invention(s) claimed in U.S. Patent No. 8,745,963 is merely an aggregation or an existing combination such that the several elements and features claimed were individually known to person skilled in the art and analogous arts, and the claimed accumulations and use of such elements and features did not produce a new or different function, characteristic or method and the effect produced by the claimed combinations was not greater than the sum of the several effects of the combined parts taken separately.

l) U.S. Patent No. 8,745,963 and each of its purported claims is invalid because NDY's purported invention is not a true invention.

m) U.S. Patent No. 8,745,963 and each of its purported claims is invalid under 35 U.S.C. § 101 on the basis of double patenting.

n) U.S. Patent No. 8,745,963 and each of its purported claims is invalid under 35 U.S.C. § 102 because NDY's first public disclosure of its quick connect and disconnect coupling for stalk stompers was more than one year before the effective filing date of the patent.

o) U.S. Patent No. 8,745,963 and each of its purported claims is invalid under 35 U.S.C. § 102 because at least one of Pride's allegedly

infringing products was on sale or sold more than one year before the effective filing date of the patent.

**Third Defense:** Upon information and belief, during the prosecution of the application which matured in to U.S. Patent No. 8,745,963, the alleged inventor and their counsel, intentionally or through gross negligence, failed to fulfill their duty of candor and good faith toward the U.S. Patent & Trademark Office ("USPTO") as required by 37 C.F.R. § 1.56, namely:

a) In an Application Data Sheet filed with the USPTO in connection with U.S. App. Ser. No. 13/927,353 filed June 26, 2013 ("the '353 application")(which later matured into U.S. Patent No 8,745,963), NDY made only a single priority claim, namely to U.S. App. Ser. No. 13/827,625 filed on March 14, 2013.

b) A Filing Receipt mailed by the USPTO on July 23, 2013 in connection with the '353 application indicated under "Domestic Priority data as claimed by applicant" only a single claim of priority, namely U.S. App. Ser. No. 13/827,625 filed on March 14, 2013.

c) At no time during the prosecution of the '353 application did the alleged inventor or their counsel submit an updated Application Data Sheet, request a Corrected Filing Receipt, or attempt in any way to amend priority of the '353 application.

d) The face of U.S. Patent No. 8,745,963 identifies only one application

under the "Related U.S. Application Data" heading, namely U.S. App. Ser. No. 13/827,625 filed on March 14, 2013.

e) The effective filing date of the '353 application, and resulting U.S. Patent No. 8,745,963, is therefore March 14, 2013.

f) At Paragrah 13 of NDY's Complaint filed May 7, 2013 (Docket #1), and similarly in subsequently filed amended complaints, NDY states that it "…first publicly displayed a quick connect and disconnect coupling for stalk stompers…" on or about August 14, 2010, a date more than one year before the effective filing date of the '353 application.

g) At Paragraph 23 of NDY's Complaint filed May 7, 2013 (Docket #1), and similarly in subsequently filed amended complaints, NDY alleges that Pride introduced allegedly infringing products as early as June 15, 2011, a date more than one year before the effective filing date of the '353 application.

h) At no time during the prosecution of the '353 application did the alleged inventor or their counsel submit to the USPTO, through an Information Disclosure Statement or other, information pertaining to NDY's first public disclosure of its quick connect and disconnect coupling for stalk stompers more than one year before the effective filing date of the '353 application.

i) At no time during the prosecution of the '353 application did the

31

alleged inventor or their counsel submit to the USPTO, through an Information Disclosure Statement or other, information pertaining to Pride's allegedly infringing products believed to have been on sale or sold more than one year before the effective filing date of the '353 application.

j) NDY now alleges, in its Second Amended Complaint (Docket #52), that Pride's allegedly infringing products believed by NDY to have been on sale or sold more than one year before the effective filing of the '353 application to be infringing U.S. Patent No. 8,745,963.

k) By not bringing to the attention of the USPTO, through an Information Disclosure Statement or other, information pertaining to NDY's first public disclosure of its quick connect and disconnect coupling for stalk stompers more than one year before the effective filing date of the '353 application, the alleged inventor and their counsel, intentionally or through gross negligence, failed to fulfill their duty of candor and good faith toward the USPTO as required by 37 C.F.R. § 1.56.

l) By not bringing to the attention of the USPTO, through an Information Disclosure Statement or other, information pertaining to Pride's allegedly infringing products believed to have been on sale or sold more than one year before the effective filing date of the '353 application, the alleged inventor and their counsel, intentionally or

through gross negligence, failed to fulfill their duty of candor and good faith toward the USPTO as required by 37 C.F.R. § 1.56.

**Fourth Defense:**  Upon information and belief, any Petition to Accept An Unintentionally Delayed Claim Under 35 U.S.C. 120 For The Benefit Of Prior-Filed Applications, Updated Filing Receipt, Certificate of Correction or Reissue Application granted by the USPTO in connection with U.S. Patent No. 8,745,963 is invalid, void or unenforceable as the alleged inventor or their counsel, intentionally or through gross negligence, failed to fulfill their duty of candor and good faith toward the U.S. Patent & Trademark Office ("USPTO") as required by 37 C.F.R. § 1.56, namely:

a)  On or about June 26, 2013, NDY filed Patent Application Ser. No. 13/927,353, which eventually issued into U.S. Pat. No. 8,745,963 (hereinafter interchangeably, as the case may be, "the '353 application" or "the '963 patent").

b)  According to the Application Data Sheet filed with the '353 application, the '353 application was a Continuation application of, and claimed domestic priority under 35 U.S.C. 120 only to, U.S. App. No. 13/827,625 ("the '625 application").

c)  The '625 application, filed on or about March 14, 2013, was a Continuation-In-Part application of 13/493,078 ("the '078 application") (which eventually issued as U.S. Pat. No. 8,567,167), which itself was a Continuation-In-Part application of U.S. Pat. App. No. 13/135,944

33

(which eventually issued as U.S. Pat. No. 8,418,432 ("the '432 patent")). The '625 application contained additional disclosure as compared to either the previous two applications, namely the disclosure of a torsion spring.

d) A Filing Receipt mailed by the USPTO on or about July 23, 2013 in connection with the '353 application indicated under "Domestic Priority data as claimed by applicant" only a single claim of priority, namely to the '625 application. Upon information and belief, NDY received and reviewed the filing receipt and checked it for errors.

e) Per 37 CFR 1.78(c), NDY had until October 26, 2013, to claim domestic priority to any other prior filed application under 35 USC 120. As of that date, the only domestic claim of priority was to the '625 application.

f) At no time during the prosecution of the '353 application and before the issuance of the '963 patent did the alleged inventor or their counsel submit an updated Application Data Sheet, request a Corrected Filing Receipt, or attempt in any way to amend priority of the '353 application.

g) As initially filed, the '353 application contained two independent claim sets, each of which claimed as the invention a stalk stomper comprising, *inter alia*, a torsion spring, the teaching of which was not

disclosed in either the '432 patent nor the '078 application.

h) On or about May 7, 2013, NDY instituted the present proceedings, alleging, *inter alia*, patent infringement of the '432 patent.

i) On or about July 29, 2013, Pride answered NDY's complaint denying, *inter alia*, that it had infringed the '432 patent and counterclaiming that at least claim 1 of the '432 patent was invalid, based in part on the terms "retentions means" being indefinite and the "whereby" clause being limiting in nature.

j) On or about August 26, 2013, Pride served NDY with its first Initial Contentions raising issue with the "retention means" claim terms, as well as the "whereby" clause, each of claim 1.

k) On or about September 26, 2013, Pride filed with the Patent Trial and Appeal Board ("PTAB") a petition requesting *inter partes* review ("IPR") of the '432 patent, based in part on the "retention means" claim terms. Pride filed its brief in support of the IPR with the PTAB on October 3, 2013.

l) On or about January 21, 2014, Pride served NDY with its Final Contentions, again raising issue with "retention means" language, as well as the "whereby" clause, each of claim 1.

m) On or about February 21, 2014, NDY filed an entirely voluntary supplemental amendment with the USPTO in connection with the '353

application to introduce for the first time claims 18 – 24, wherein claim 18 was similar in scope to claim 1 of the '432 patent, but no longer included any "retention means" or "whereby" terms, as well as replacing the "torsion spring" element not introduced until the '078 application with "spring member" as initially disclosed in the '432 patent.

n) On or about June 10, 2014, the '963 patent issued with claim 1 directed at a stalk stomper having a torsion spring, and claim 6 directed at a stalk stomper having a spring member. NDY later asserted during claim construction that the spring member of claim 6 was properly construed to be a compression spring, not a torsion spring.

o) The '963 patent issued having the only domestic claim of priority to the '625 application, giving the '963 patent an effective filing date of March 14, 2013.

p) Upon information and belief, NDY did not intend the '353 application to claim priority to the '432 patent when filing the '353 application as evinced by the Application Data Sheet filed therewith.

q) Upon information and belief, NDY did not intend the '353 application to claim priority to the '432 patent when filing the '353 application as by all claims initially directed at a stalk stomper having a torsion spring and not a spring member.

36

r)  Upon information and belief, prior to October 26, 2013, NDY did not intend the '353 application to claim priority to the '432 patent as evinced by its failure to correct the Filing Receipt by October 26, 2013.

s)  Upon information and belief, NDY did not intend the '353 application to claim priority to the '432 patent at least until NDY introduced claims 18 – 24 therein, wherein the broader scope of the spring member of claim 18 made it necessary for the '353 application to claim back to the '432 to avoid the statutory provisions of 35 USC 102.

t)  Upon information and belief, the earliest date NDY ever intended to rely upon the domestic priority of the '432 patent was February 21, 2014, nearly four months past the 37 CFR 1.78(c) deadline to do so.

u)  On or about June 26, 2014, NDY filed a seconded amended complaint in the present matter to assert patent infringement of at least claim 6 of the '963 patent.

v)  On or about July 25, 2014, Pride filed its Answer and Counterclaims in connection with the second amended complaint, wherein pride denied the validity of the '963 patent and counterclaimed that the '963 patent was invalid at least in part for alleging infringement of a product that had been on sale more than one year prior to the effective filing date of the '963 patent, and for having alleged to have sold its product covered

by the '963 patent more than one year prior to the effective filing date of the '963 patent.

w) On July 31, 2014, NDY filed with the USPTO in connection with the '963 patent a Petition to Accept An Unintentionally Delayed Claim Under 35 U.S.C. 120 For The Benefit Of Prior-Filed Applications ("Petition"), which contained a certified statement that the entire delay between the date the benefit claim was due and the date the benefit claim was filed was unintentional.

x) Upon information and belief, this statement was intentionally and knowingly false.

y) Upon information and belief, the USPTO relied upon this false statement in issuing an Updated Filing Receipt in connection with the '963 patent on or about December 31, 2014.

z) Upon information and belief, the USPTO relied upon this false statement in granting the Petition on or about January 5, 2015.

aa) Upon information and belief, the USPTO relied upon this false statement in issuing a Certificate of Correction on or about February 10, 2015, in connection with the '963 patent.

## COUNTERCLAIMS

Defendants and Counterclaimants Pride Solutions LLC and May Wes Manufacturing (collectively, "Pride"), assert the following counterclaims for relief against Not Dead Yet Manufacturing, Inc. ("NDY") as follows:

1.      This is an action under the Declaratory Judgment Act and the patent laws of the United States to declare that Pride and its affiliates and subsidiaries are free to make, have made, use, sell, induce others to use, or offer to sell, the accused products in the United States because NDY's assert patent is invalid, not infringed, and unenforceable.

2.      This is further an action for false advertising arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

3.      This is further an action for false advertising and unfair competition under Illinois state law pursuant to the Uniform Deceptive Trade Practices Act, 815 ILCS § 510, and the llinois Consumer Fraud Act, 815 ILCS § 505/2.

4.      Subject matter jurisdiction exists in this Court under 28 U.S.C. §§ 1331, 1338(a) 1367(a) and 2201(a).

5.      Pride Solutions LLC is a limited liability company organized and existing under the laws of Minnesota and having its principal place of business in Minnesota. May Wes Manufacturing is a division of Pride Solutions LLC. May-Wes Mfg. is a registered assumed name held by Pride Solutions LLC.

6.      NDY is a corporation organized and existing under the laws of Illinois,

and upon information and belief, has its principal place of business in Illinois.

7.      NDY has commenced the underlying patent infringement action in this Court, and thus has submitted to this Court's jurisdiction. Moreover, the Court has personal jurisdiction over NDY because it is a citizen of Illinois.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because NDY is subject to the personal jurisdiction of the Court and because NDY filed the underlying suit for patent infringement in this District.

## FIRST COUNTERCLAIM FOR RELIEF

9.      Pride incorporates by reference all the averments of its answer and affirmative defenses and the foregoing Paragraphs 1-8 above as if fully set forth herein.

10.      An actual controversy has arisen and now exists between the parties regarding non-infringement of U.S. Patent Nos. 8,418,432 and 8,745,963 because NDY asserts in its Second Amended Complaint that Pride infringes each of these patents.

11.      Pride has not infringed, and does not infringe, directly, indirectly, contributorily, or by inducement, any valid or enforceable properly construed claim of U.S. Patent Nos. 8,418,432 or 8,745,963, either literally or under the doctrine of equivalents.

12.      Further, NDY is estopped to assert or maintain a construction of U.S. Patent Nos. 8,418,432 or 8,745,963 or its claims that would cover or read upon any use by Pride to the extent that, during the prosecution of the application for the patent in

the U.S. Patent and Trademark Office, patentee, or patentee's representative, by reason of prior art cited against the application, so limited the claims of the application as to exclude from the purview of such claims any acts of Pride.

13.     Pride will give timely notice under the rules of the Court and the provisions of 35 U.S.C. § 282 of evidence to be relied upon in support of its assertion of invalidity and non-infringement.

14.     Upon reason and belief, unless NDY is permanently enjoined from doing so, it will continue to bring charges of infringement and acts of enforcement or suit based upon U.S. Patent Nos. 8,418,432 or 8,745,963 against Pride and those in privity with Pride, including Pride's dealers, distributors, customers, and prospective customers.

15.     Pride is entitled to declaratory judgment that it has not infringed, and is not infringing, any valid or enforceable claim of either U.S. Patent Nos. 8,418,432 or 8,745,963.

16.     Pride is entitled to declaratory judgment that it has not violated, and is not violating, 15 U.S.C. § 1125(a)(1) (Lanham Act § 43(a)(1)).

17.     Pride is entitled to declaratory judgment that it has not violated, and is not violating, Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2.

18.     Pride is entitled to declaratory judgment that it has not violated, and is not violating, Illinois Consumer Fraud And Deceptive Business Practices Act 815 ILCS 505 *et seq.*

## SECOND COUNTERCLAIM FOR RELIEF

19.     Pride incorporates by reference all the averments of its answer and affirmative defenses and the foregoing Paragraphs 1-18 above as if fully set forth herein.

20.     An actual controversy has arisen and now exists between the parties regarding invalidity or unenforceability of U.S. Patent Nos. 8,418,432 and 8,745,963 because NDY asserted in its Second Amended Complaint that Pride infringes each of these patents and implies that the patents were duly and legally issued.

21.     The patents in suit, and each and every of their respective claims, is invalid, void and/or unenforceable under the provisions of one or more of 35 U.S.C. §§ 101, 102, 103, and 112, including without limitation for one or more of the following reasons:

          a.     The differences between the subject matter described and claimed in each of the patents in suit and the prior art are such that the subject matter as a whole would have been obvious at the time the purported invention was made to a person having ordinary skill in the art to which the subject matter pertains.

          b.     The purported invention claimed is not in fact an invention, but is merely an aggregation or an existing combination. The several elements and features of the alleged invention were individually known to persons skill in the art to which the subject matter pertains, and the accumulation and use of such elements and features did not produce a

42

new or different function or characteristic or new method compared with the function, characteristics, or methods previously performed or produced by the use of such elements and apparatus. Further, the effect produced by the combination was not greater than the effect of the sum of the several of the combined parts taken separately.

c.      The specification of the patent does not contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

d.      The claims of the patent do not particularly point out and distinctly claim the subject matter which the inventor regards as the invention.

e.      The claims are indefinite, ambiguous, uncertain, and incomprehensible.

f.      To the extent that the claims of U.S. Patent No. 8,745,963 are found to read on Pride's product, Pride's product anticipates U.S. Patent No. 8,745,963 for being on sale more than year before the effective filing date of U.S. Patent No. 8,745,963.

g.      NDY's product or Pride's product render the asserted claims of U.S. Patent Nos. 8,418,432 and 8,745,963 anticipated under at least 35

43

U.S.C. §§102 (a), (b), or (e).

      h.     Pride repeats and incorporates by reference the allegations contained in its Affirmative Defenses of the preceding Answer as though set forth fully and independently herein.

22.     Pride will give timely notice under the rules of the Court and the provisions of 35 U.S.C. § 282 of evidence to be relied upon in support of its assertion of invalidity and non-infringement.

23.     Upon reason and belief, unless U.S. Patent Nos. 8,418,432 and 8,745,963 are held to be invalid, NDY will continue to bring charges of infringement and acts of enforcement or suit based upon U.S. Patent Nos. 8,418,432 or 8,745,963 against Pride and those in privity with Pride, including Pride's dealers, distributors, customers, and prospective customers.

24.     Pride is entitled to declaratory judgment that U.S. Patent Nos. 8,418,432 and 8,745,963, and each of their asserted claims, are invalid.

WHEREFORE, Pride prays for entry of judgment as follows: (a) under the First Counterclaim for Relief, that the Court determine and declare that Pride has not infringed, and is not infringing, any valid and enforceable claim of U.S. Patent Nos. 8,418,432 or 8,745,963, either directly or indirectly, by inducement, contributorily, literally, or under the doctrine of equivalents, and that Pride has committed no false advertising nor any unfair business practices;  (b) under the Second Counterclaim for

44

Relief, that the Court determine and declare that U.S. Patent Nos. 8,418,432 and 8,745,963 and their asserted claims are invalid; (c) that the Court dismiss NDY's Second Amended Complaint with prejudice as to all purported claims; (d) that the Court award NDY no relief whatsoever; (e) that the Court award Pride the assessable costs of defending this action; (f) that the Court declare this case exceptional and hold Pride to be the prevailing party, and award Pride its reasonable attorney fees under 35 U.S.C. § 285; and (g) that the Court award Pride such other relief to which the Court deems just and proper.

Respectfully submitted,
**Pride Solutions, LLC**
**May Wes Manufacturing**

Dated: October 26, 2015

By: /s/Dustin R. DuFault/
Dustin R. DuFault (*pro hac vice*)
**DuFault Law Firm, P.C.**
PO Box 1219
Minnetonka MN 55345
DDuFault@DuFault-Law.com
(952) 935-4392

Tawfiq I. Ali (ID No.: 6292261)
**ALI LAW PRACTICE LLC**
200 E. Randolph St. Ste. 5100-24
Chicago, IL 60601
tali@alilawpractice.com
(312) 970-1847

Craige O. Thompson (*pro hac vice*)
**Thompson Patent Law Offices PC**
4900 Hwy. 169 North Ste. 315
New Hope, MN 55428
craige@thompsonpatentlaw.com
(763) 557-4909
*Attorneys for Pride Solutions LLC and*
*May Wes Manufacturing*

**CERTIFICATE OF SERVICE**

I, Dustin DuFault, an attorney, certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Joseph M.  Kuo
**Arnstein & Lehr, LLP**
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606
jmkuo@arnstein.com.

Dated: October 26, 2015                          /s/Dustin R. DuFault

Dustin R. DuFault (*pro hac vice*)
**DuFault Law Firm, P.C.**
PO Box 1219
Minnetonka, MN 55345
dustin@dufault-law.com
(952) 935-4392