IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

| | |
|---|---|
| NOT DEAD YET MANUFACTURING, INC., d/b/a NDY MFG. INC., | Case No.: 13 CV 3418 |
| Plaintiffs, | |
| v. | |
| PRIDE SOLUTIONS, LLC, and MAY WES MANUFACTURING, | Judge: Hon. Rebecca Pallmeyer |
| Defendants. | |

_____

**PRIDE'S MEMORANDUM IN SUPPORT OF MOTION TO LIMIT ARGUMENTS OR OVERRULE ATTORNEY WORK PRODUCT OBJECTIONS**

Joseph M. Kuo prosecuted both patents NDY asserts in this case (U.S. Patent Nos. 8,418,432 ("'432 patent") and 8,745,963 ("'963 patent")), and has been NDY's lead counsel in this litigation. As the prosecuting attorney, his actions, knowledge, and intentions in prosecuting the patent applications are charged to the patent applicant. *See, e.g.*, *Taltech Ltd. v. Esquel Enters.*, 604 F.3d 1324, 1334 (Fed. Cir. 2010) ("'[T]he knowledge and actions of applicant's attorney are chargeable to applicant.'") (quoting *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987)); *Avid Identification Sys. v. Crystal Imp. Corp.*, 603 F.3d 967, 973 (Fed. Cir. 2010) ("If an individual who is substantively involved in the preparation or prosecution of an application fails to comply with his duty of candor, then that individual's misconduct is chargeable to the applicant for the patent, and the applicant's patent is held unenforceable.").

The inequitable conduct allegations in Pride's Fourth Affirmative Defense focus on Mr. Kuo's actions, knowledge, and intentions in prosecuting the '963 patent, where he asserted in his personal

capacity (by way of a Petition to Accept An Unintentionally Delayed Claim Under 35 U.S.C. § 120 For The Benefit Of Prior-Filed Applications (the "Petition")) that he signed (*see* Exhibit 1, hereto) that the entire delay in claiming domestic benefit of the '432 patent was unintentional.

At the December 16, 2015 status hearing, in relation to Mr. Kuo's potential testimony at trial concerning the inequitable conduct allegations, Pride's counsel brought attention to ABA Model Rule 3.7 (adopted by the Northern District of Illinois) and Illinois Rule of Professional Conduct 3.7, which generally prohibit a lawyer from "act[ing] as advocate at a trial in which the lawyer is likely to be a necessary witness." Mr. Kuo, in apparent recognition of the Rule 3.7 concern, stated that he did not intend to testify.

Because NDY intends not to offer Mr. Kuo as a witness, Pride hereby moves to bar any argument by NDY as to matters upon which only Mr. Kuo would have personal knowledge. As set forth more fully below, those matters include (1) any argument that Mr. Kuo made an alleged mistake surrounding the Application Data Sheet (ADS) he signed and submitted on June 26, 2013 (Exhibit 2, hereto), such that it did not reflect his true intentions and (2) any argument that he did not discover his alleged mistake in not claiming the benefit of the '432 patent filing date until soon before filing the July 31, 2014 Petition.

A further reason for barring any argument by NDY on these matters is that at a recent Rule 30(b)(6) deposition (Exhibit 4, hereto; *see also* Exhibit 5, hereto (Rule 30(b)(6) Notice of Deposition)), Mr. Kuo instructed his client not to answer questions concerning Mr. Kuo's determination of claims of priority for the '963 patent, on the asserted basis of attorney work product protection. The arguments should be barred because to permit otherwise would allow NDY to unfairly use the asserted privilege as both a sword and a shield. Moreover, the assertion of the privilege is a manifestation of NDY's intent

not to offer admissible evidence concerning the allegedly protected matters. If the Court agrees that the arguments will be barred, Pride does not request any further action from the Court on the attorney work product assertions at this time.

If, however, the Court does permit NDY to proceed on arguments relating to Mr. Kuo's allegedly true intentions concerning the ADS and claims of priority, Pride requests that the attorney work product objections be overruled, at least because they concern matters not in anticipation of this litigation. In such event, Pride should be permitted to obtain further discovery on those matters at NDY's expense.

As for the possibility that Pride could call Mr. Kuo as a witness, Pride asks the Court to recognize that Mr. Kuo has broadly claimed attorney-work product protection (which Pride disputes) as to the very issues upon which he would be a necessary witness. If the Court overrules NDY's attorney-work product objections and permits Pride discovery therein to determine what Mr. Kuo's testimony would be, it may turn out that he is a necessary witness for Pride. However, based upon Mr. Shoup's prior testimony, and as discussed in greater detail herein, it would seem nearly certain that Mr. Kuo would be a necessary witness, not only for Pride but for NDY as well. In that event, Mr. Kuo's recusal as trial counsel under Rule 3.7 would be proper.

## BACKGROUND

The underlying application for the '963 patent (Patent Application Ser. No. 13/927,353 ("'353 application")), was filed on June 26, 2013. The application was entitled, "Adjustable Angle Stalk Stomper with Torsion Spring." It was the fourth in a line of applications, including Patent Application Ser. No. 13/827,625 ("'625 application," filed March 14, 2013), Patent Application Ser. No. 13/493,078, ("'078 application", filed June 11, 2012) and Patent Application Ser. No. 13/135,944

("'944 application", filed July 19, 2011), which eventually issued as the '432 patent. Mr. Kuo was the prosecuting attorney for all four of these applications.

With the '353 application filed on June 26, 2013, Mr. Kuo signed and submitted an Application Data Sheet ("ADS") referencing only the '625 application (having a March 14, 2013 filing date) for purposes of claiming the benefit of an earlier effective filing date under 35 U.S.C. 120. (*See* Exhibit 2, hereto.) The ADS is the vehicle for claiming the benefit of the filing date of an earlier application. *See* 37 CFR 1.76; 37 CFR 1.78(c)(2). Mr. Kuo's client (and NDY's Rule 30(b)(6) witness on the matter), Kenneth Shoup, admits that he left it to Mr. Kuo to determine what if any earlier applications should be referenced on the ADS. (*See* Exhibit 4, hereto, at 17:20-18:14.) Mr. Shoup had no input on the matter. (*Id.* at 18:15-19:3.) Furthermore, when Mr. Shoup was asked about the circumstances that led to the referencing of the '625 application on the ADS, and more generally, his counsel's determination of priority for the '963 patent, Mr. Kuo instructed him not to answer on the alleged basis that the subject matter was protected attorney work product. (*Id.* at 19:5-19:14; 19:18-21:9; 28:13-29:17.)

On July 23, 2013, the USPTO issued a filing receipt addressed to Mr. Kuo's then-current law firm, Olson & Cepuritis, Ltd. (Exhibit 3, hereto.) The filing receipt confirmed that the only earlier application claimed for purposes of domestic priority was the '625 application, having a filing date of March 14, 2013. (*Id.*) That filing receipt instructed the recipient to "verify the accuracy of the data presented on this receipt," and in boldface, instructed: "If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction." (*Id.*) The record discloses no attempt by Mr. Kuo to seek a "Filing Receipt Correction." When asked whether any alleged mistake with respect to the ADS was discovered at the time of the filing receipt, NDY's Rule 30(b)(6) witness (Mr. Shoup) answered that he did not know. (Exhibit 4, at 45:23-46:2.)

4

Under 37 CFR 1.78(c), Mr. Kuo had a four-month period after the initial filing of the '353 application to amend his claim for benefit of an earlier filed application. That period expired October 26, 2013. The federal regulations are clear that "failure to timely submit the reference … is considered a waiver of any benefit under 35 U.S.C. § 120 … to the prior-filed application." 37 CFR 1.78(c)(3). Furthermore, the "time periods set forth" for claiming priority "are not extendable." 37 CFR 1.78(g)

Mr. Kuo did not seek to amend before the October 26, 2013 deadline, or even attempt to do so thereafter. Accordingly, when the '353 application issued more than seven months after the deadline as the '963 patent on June 10, 2014, it naturally issued with an earliest potential effective filing date of March 14, 2013, in accordance with the election provided by Mr. Kuo through the ADS. That claim of benefit only to the '625 application (with an effective filing date of March 14, 2013) was clearly visible on the face of the issued '963 patent. (*See* Joint Appendix B, Dkt. 69-2, at p. 1.)

It was not until July 31, 2014, that Mr. Kuo signed and submitted to the USPTO a Petition to Accept An Unintentionally Delayed Claim Under 35 U.S.C. § 120 For The Benefit Of Prior-Filed Applications (the "Petition") with respect to the '963 patent. (Exhibit 1.) In that Petition, Mr. Kuo requested for the first time that the '963 patent receive not just the benefit of the filing date of the earlier '625 application, but also the '078 application (filed June 11, 2012) and the '944 application, (filed July 19, 2011 (and issuing as the '432 patent)). Mr. Kuo personally certified "that the entire delay between the date the claim was due under 37 CFR 1.78 [i.e., October 26, 2013] and the date of the filing of the claim for benefit of the prior-filed applications [i.e., July 31, 2014] was unintentional." (*Id.*)

For many reasons, including those Pride has already articulated, the circumstances of the prosecution of the '963 patent suggest that Mr. Kuo's statement of unintentional delay in the Petition was false. That Mr. Kuo intended to claim priority only to the '625 application is shown not only by his

5

making that express claim of priority on the Application Data Sheet filed with the '353 application on June 26, 2013, but also by his decision not to amend that claim of priority after receiving the Filing Receipt issued by the USPTO on July 23, 2013. Moreover, the proposed patent claims initially filed with the application and through more than the first seven months show why he would have claimed priority only to the '625 application as opposed to the earlier '432 patent. Under 35 U.S.C. § 120, a claimed invention can receive the benefit of an earlier filing date of an earlier application, which however will affect the potential term of any patent issuing thereon. Through the first seven months of the '353 application, all of NDY's proposed claims included as a term a "torsion spring"—which coincidentally was first disclosed in the '625 application on March 14, 2013, not in any of the earlier applications. (*See* Joint Appendix D, Dkt. 69-4, at pp. 73-79.) By claiming only the '625 application for domestic priority, which was the very first application to disclose a stalk stomper assembly utilizing a torsion spring, NDY would be afforded the benefit of nearly twenty additional months of patent term on any patent issuing on the '353 application. *See* 35 U.S.C. § 154 (patent term calculated from the date the patent issues "…and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120…, from the date on which the earliest such application was filed"). As the '432 patent had no disclosure of any torsion spring, that specification would not itself support any claims having a torsion spring as a limitation. Further, as NDY has stated in paragraph 18 of its Second Amended Complaint (Dkt. 52) that it first publicly displayed its quick connect stalk stomper which is the subject of the '432 patent on August 14, 2010, and being that the '625 application, which was the first to disclose a torsion spring, was not filed until March 14, 2013—more than one year after NDY publicly displayed its quick connect stalk stomper—claiming benefit back all the way to the '432 patent

6

would not prevent such public disclosure as being prior art against either the '625 application nor the '353 application. In other words, there would be no benefit in having the '353 application, as filed, to claim all the way back to the '432 patent. Recalling that the '432 patent issued on an application filed on July 19, 2011, whereas the '625 application was filed on March 14, 2013, any patent claiming domestic priority only to the '625 application—as opposed to the '432 patent—would potentially have an additional 20 months of patent term. In short, based upon the '353 application as filed, there would be no benefit to claim priority back to the '432 patent, only a potential loss in patent term.

Still, NDY (by way of testimony from Rule 30(b)(6) witness Mr. Shoup) has taken the position that Mr. Kuo's statement of unintentional delay is true because, it contends, Mr. Kuo's intent all along was to claim the benefit of the '432 patent filing date despite what was actually reflected on the ADS he signed and submitted. The issue raised by this Motion is whether NDY's counsel should be permitted to make that argument, given that Mr. Kuo intends not to provide any of his own testimony on that or any other matter, and indeed, given that Mr. Kuo has claimed attorney-work-product protection on the pertinent issues.

## ARGUMENT

I.  **Because Mr. Kuo Intends Not to Testify, the Court Should Bar NDY From Making Any Argument That (1) Mr. Kuo Made an Alleged Mistake Surrounding the Application Data Sheet (ADS) Such That the ADS Did Not Reflect His True Intentions or (2) That Mr. Kuo Did Not Discover His Alleged Mistake Until Soon Before Filing the July 31, 2014 Petition.**

Pride asks the Court to recognize that because Mr. Kuo does not intend to testify at trial, NDY should not be permitted to make any argument concerning Mr. Kuo's knowledge or intentions in prosecuting the '963 patent, including (1) any argument that Mr. Kuo made an alleged mistake surrounding the ADS such that the ADS did not reflect his true intentions and (2) any argument that he

7

did not discover his alleged mistake in not claiming the benefit of the '432 patent filing date until soon before filing the July 31, 2014 Petition.

It is well established that a fact witness may testify to a matter at trial only if he or she has personal knowledge of that matter. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). For the reasons more fully described below, no NDY witness other than Mr. Kuo could provide admissible testimony based on personal knowledge to support any argument that the ADS, as signed and submitted by Mr. Kuo, failed to reflect his true intentions. Nor could any NDY witness other than Mr. Kuo provide admissible testimony that Mr. Kuo failed to discover his alleged mistake until more than one year later when he filed the Petition for unintentional delay. While Mr. Shoup has testified that he believes his attorney made a mistake, even he recognizes that his entire basis for that belief is that that is what Mr. Kuo told him. (Exhibit 4, at 49:9-49:22.) Accordingly, at best, the only testimony that Mr. Shoup (or any other witness called by NDY) could offer regarding Mr. Kuo's alleged mistake would be inadmissible hearsay. Fed. R. Evid. 801(c) (stating that hearsay is generally any out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"); Fed. R. Evid. 802 (stating that "[h]earsay is not admissible," unless it falls within a statutory or rule-based exception). Therefore, without Mr. Kuo's testimony under oath, NDY has no admissible evidence to argue that the ADS submitted by Mr. Kuo failed to reflect Mr. Kuo's true intentions.

ABA Model Rule 3.4(e) and Illinois Rule of Professional Conduct 3.4(e) both prohibit a lawyer in trial, to "allude to any matter … that will not be supported by admissible evidence" or "assert personal knowledge of facts in issue except when testifying as a witness." Any argument by NDY that Mr. Kuo made a mistake with respect to the ADS or that he did not discover the alleged mistake until

soon before he filed the Petition, without Mr. Kuo's testimony supporting those arguments, would run afoul of Rule 3.4(e) because it alludes to a matter not supported by admissible evidence. Moreover, to allow Mr. Kuo to make those arguments as trial counsel would further run afoul of Rule 3.4(e) because it is impossible to see how he could make such arguments without implicitly asserting personal knowledge as to those subjects. He is, after all, the person who knows more than anyone what his true knowledge and intentions were. To allow him to argue, for example, that he made a mistake on the ADS such that it did not reflect his true intentions, and did not discover it until soon before he filed the Petition, if those arguments are given any weight at all, would be tantamount to allowing him to testify in court without being placed under oath or facing cross-examination. This, the Court should not permit.

   A. **Mr. Kuo Is The Only Person Who Could Conceivably Have Personal Knowledge That the ADS He Signed and Submitted Did Not Accurately Reflect His Intentions In Making Claims for Benefit of Earlier Filed Applications. Any Other NDY Witness's Testimony on the Matter Would be Inadmissible.**

It is axiomatic that only Mr. Kuo has direct perception of his own mental impressions, therefore he alone could have any direct knowledge that the ADS as he submitted failed to reflect his true intentions. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. Ill. 2014) (recognizing that under Fed. R. Evid. 602, personal knowledge does not include speculating as to another person's "state of mind," or "other intuitions, hunches, or rumors"). But aside from that fact, it is also apparent from NDY's Rule 30(b)(6) deposition testimony that Mr. Kuo alone was in charge of determining what earlier applications should be cited for claims of priority in the '963 patent. Notably, when Mr. Shoup was asked, "Are you familiar with any of the procedures involved in putting the application data sheet together," he said, "No [;] I left that in the hands of my attorney." (Exhibit 4, at 11:18-11:24.) Having left the preparation of the ADS in the hands of his attorney, Mr. Shoup also did not know "how [Mr. Kuo] prepared it or what steps or procedures the attorney would have taken in putting that together."

9

(*Id.* at 12:1-12:15.) Mr. Shoup did not know whether the ADS was filed electronically or otherwise. (*Id.* at 21:10-21:24.) Nor did Mr. Shoup know if anyone reviewed the ADS before it was filed. (*Id.* at 22:2-22:5.) Mr. Shoup's knowledge was so deficient that, at times during the deposition, Mr. Kuo was whispering into Mr. Shoup's ear while questions were pending, supposedly to feed him "accurate testimony." (*Id.* at 12:16-12:24.)

Indeed, with respect to the block on the ADS concerning specific references to earlier applications (where Mr. Kuo inserted only the '625 application), Mr. Shoup did not "have any involvement or input of information into" that block. (*Id.* at 18:15-19:3.) Rather, Mr. Shoup confirmed that all of the domestic benefit information on the ADS was provided by Mr. Kuo. (*Id.* at 17:20-18:14.) That the determination of which earlier applications should be claimed for domestic priority purposes was driven by Mr. Kuo (and not by Mr. Shoup or any other person), is further confirmed by Mr. Kuo's insistence that information surrounding it is protected attorney work product. (*See id.* at 19:5-19:14; 19:18-21:9; 28:13-29:17.)

Of course, that Mr. Kuo (not Mr. Shoup) would have personal knowledge of pertinent matters is also reflected by the very fact that it is Mr. Kuo (not Mr. Shoup) who signed and submitted the Petition containing the statement "that the entire delay between the date the claim was due under 37 CFR 1.78 [i.e., October 26, 2013] and the date of the filing of the claim for benefit of the prior-filed applications [i.e., July 31, 2014] was unintentional." (Exhibit 1.)

Mr. Shoup claims that he did later believe that Mr. Kuo made a mistake in claiming the benefit of only the '625 application filing date and no earlier applications. (Exhibit 4, at 49:9-49:22.) But Mr. Shoup's entire basis for that alleged belief is that it is what Mr. Kuo told him. (*Id.*) As NDY's Rule 30(b)(6) designated deponent, Mr. Shoup testified that the entirety of his basis for believing that Mr.

10

Kuo made a mistake was: "Joe Kuo called me and said that they had made a mistake and that he had corrected it." (*Id.*) That telephone communication from Mr. Kuo, of course, is classic inadmissible hearsay if propounded by NDY. *See* Fed. R. Evid. 801-802.

If NDY wants to argue that Mr. Kuo made a mistake with respect to the ADS such that it did not properly reflect his intent, it would require Mr. Kuo's testimony to do so. Because Mr. Kuo does not intend to testify, the argument should be barred.

> **B. Mr. Kuo Is The Only NDY Witness Who Could Testify as to Whether and When He Discovered Making Any Alleged Mistake In Claiming the Benefit of Earlier Filed Applications. Any Other NDY Witness's Testimony on the Matter Would be Inadmissible.**

It is indisputable that Mr. Kuo would have the best knowledge of whether and when he became aware of any alleged mistake he purportedly made. What is also clear, however, is that Mr. Shoup has no knowledge at all (personal or otherwise) as to how early the alleged basis for filing the Petition was discovered. For example, Mr. Shoup specifically did not know whether the alleged mistake giving rise to the Petition was discovered at the time of the filing receipt issued on July 23, 2013. (Exhibit 4 at 45:23-46:2.) Nor did he know whether the alleged mistake was discovered before or after the '963 patent issued (*Id.* at 46:3-46:9). Plainly, if NDY wants to argue that Mr. Kuo was not aware of the alleged mistake giving rise to the Petition until soon before he filed it on July 31, 2014—even though the USPTO sent his office the filing receipt and other notice (such as on the face of the issued patent itself)—it would require Mr. Kuo's testimony to do so. Because Mr. Kuo does not intend to testify, that argument should be barred.

> **II. Any Argument By NDY With Respect to Mr. Kuo's Knowledge and Intentions in Prosecuting the '963 Patent Should Be Barred Also Because NDY Has Withheld Information on Those Matters On the Alleged Basis That They are Protected by the Attorney Work Product Doctrine; If, However, the Court Does Not Bar All Such Arguments, Pride Asks the Court to Overrule the Work-Product Objections and Compel Further Discovery.**

11

As NDY's Rule 30(b)(6) designated deponent, Mr. Shoup was specifically asked whether he knew "how [the '625 application] was chosen to be put in there [i.e. the block concerning earlier applications on the ADS]." (Exhibit 4, at 19:5-19:14.) Mr. Kuo instructed him not to answer, on the alleged basis that the subject matter was covered by the attorney work product doctrine. (*Id.*) More generally, Mr. Shoup was asked about "the procedures that Plaintiff or Plaintiff's Counsel took in determining claims of priority in the '963 patent." (*Id.* at 28:13-29:17) Again, Mr. Kuo instructed him not to answer, asserting the attorney work product doctrine. (*Id.*) Finally, when Mr. Shoup was asked, "Do you know what the circumstances were or the impetus of filing [the] supplemental amendment on February 21, 2014 [i.e., the first time claims were introduced in the '963 patent not including a 'torsion spring']," again Mr. Kuo asserted the attorney work product doctrine. (*Id.* at 39:13-39:21) Apparently, it is Mr. Kuo's position that anything that could concern his mental impressions in the course of prosecuting the '963 patent is protected by the attorney work product doctrine and therefore undiscoverable. That position is particularly peculiar here, because it is precisely Mr. Kuo's mental impressions, in the form of his knowledge and intentions, that are determinative of the inequitable conduct allegations.

If NDY is permitted to rest on its attorney work product objections to protect virtually all of Mr. Kuo's mental impressions in the course of prosecuting the '963 patent, including especially those concerning his intentions in determining and claiming appropriate claims of priority for the '963 patent to earlier applications, NDY should be barred from making any argument as to Mr. Kuo's intentions that are not otherwise embodied in the ADS itself. *See Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 U.S. Dist. LEXIS 48522, at * 13 (N.D. Cal. Apr. 3, 2013) (granting motion in limine to prevent party from offering certain testimony, evidence, or argument concerning the subjective intent prong of

12

willful infringement, and relating to matters withheld on the basis of privilege; noting that otherwise, the party "'would in effect be using the privilege as both a shield and a sword.'") (quoting *Claffey v. River Oaks Hyundai*, 486 F.Supp.2d 776, 778 (N.D. Ill. 2007). To permit NDY to proceed on arguments relating to Mr. Kuo's deliberations and intentions surrounding the filing of the ADS and the claims of domestic priority, while at the same time preventing Pride from inquiring into those matter in discovery, would be manifestly unfair. *See id.*

Moreover, implicit in NDY's assertion of privilege on those matters is that NDY itself does not intend to offer any admissible evidence on those points. Any offer of such evidence, after all, would constitute a waiver of any alleged privilege. *See Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 397 (W.D. Pa. 2005) (finding waiver of attorney-client privilege and attorney-work-product protection where Plaintiff "clearly put in issue Plaintiff's attorneys' understanding of its applicable duty of disclosure with regard to material prior art" through testimony on otherwise privileged materials to defend against an inequitable conduct allegation). Accordingly, any argument by NDY as to those matters of Mr. Kuo's intentions and deliberations on which NDY has asserted attorney-work-product protection should be barred.

If, however, NDY is permitted to proceed with arguments concerning Mr. Kuo's allegedly true intentions to claim benefit of earlier filed applications not otherwise reflected on the ADS, Pride asks the Court to overrule the work-product objections and compel further discovery at NDY's expense. This is so not only because any alleged protection would be waived by NDY's putting the subject matter in issue, but also because no work-product protection applies in the first instance.

There is "a general consensus among courts that the work product doctrine does not apply to patent prosecution work because patent prosecution is not an adversarial, litigation-type proceeding,

but a wholly ex parte proceeding before the PTO." *In re Method of Processing Ethanol Byproducts & Related Subsystems '858 Patent Litig.*, 2014 U.S. Dist. LEXIS 88512, at \*\* 22-23 (S.D. Ind. June 30, 2014). To obtain work-product protection, the burden rests on NDY to show that the material sought to be protected was created primarily in anticipation of litigation. *See* Fed. R. Civ. Proc. 26(b)(3)(A) (protecting only those materials "prepared in anticipation of litigation or for trial"); *In re '858 Patent Litig.*, 2014 U.S. Dist. LEXIS 88512, at \*\* 35-36 (rejecting work product protection "on the ground that mental processes and strategies for prosecuting the patent application were influenced by [attorney's] litigation strategies," where patent prosecution was primary purpose). Here, as already discussed, every proposed claim of the '963 patent application at the time of the Application Data Sheet required a torsion spring. (*See* Joint Appendix D, Dkt. 69-4, at pp. 73-79.) NDY has never alleged that any of Pride's products infringe any patented claim requiring a torsion spring. So NDY can make no showing that any matter concerning the prosecution of the '963 patent at the time of the ADS (and at least at any time until February 21, 2014, when Mr. Kuo first introduced non-torsion spring claims) had an eye toward this litigation. Even with respect to matters surrounding the February 21, 2014 amendments, the primary purpose for those submissions was first and foremost patent prosecution, regardless of whether those claims ultimately became part of this litigation. *See In re '858 Patent Litig.*, 2014 U.S. Dist. LEXIS 88512, at \*\* 35-36 ("Because of the duty of candor to the PTO, the court cannot conceive how a primary motivating purpose for a disclosure to the PTO, or a decision not to disclose, is anything other than patent prosecution work.") Accordingly, the work product objections should be rejected, and Pride asks the Court to compel NDY to submit to discovery on the objected matters at NDY's expense.

## CONCLUSION

Wherefore, Pride respectfully moves the Court for an order barring any argument by NDY (1) that Mr. Kuo made an alleged mistake surrounding the Application Data Sheet (ADS) he signed and submitted in prosecuting the U.S. Patent No. 8,745,963 ('963 patent) on June 26, 2013, such that it did not reflect his true intentions, or (2) that Mr. Kuo did not discover his alleged mistake in not claiming the benefit of the '432 patent" filing date until soon before he filed his Petition for delayed claim of benefit on July 31, 2014. In the alternative, Pride asks that the Court overrule the attorney work product objections upon which NDY relied to withhold information relating to the foregoing matters, and to compel NDY to submit to further discovery on those matters at NDY's expense. Finally, Pride requests such other and further relief as may be just and proper.

Dated: January 6, 2016                                                  Respectfully submitted,

 /s/ Tawfiq I. Ali

Dustin R. Dufault
DuFault Law Firm, P.C.
P.O. Box 1219
Minnetonka, MN 55345
Dustin@DuFault-Law.com
(952) 935-4392

Tawfiq I. Ali (6292261)
Ali Law Practice LLC
200 E. Randolph St. Ste. 5100-24
Chicago, IL 60601
tali@alilawpractice.com
(312) 970-1847

*Attorneys for Pride Solutions LLC and May Wes Manufacturing*

## **CERTIFICATE OF SERVICE**

I, Tawfiq I. Ali, an attorney, certify that on January 6, 2016, I served the foregoing document through the Court's CM/ECF system to all counsel of record.

/s/ Tawfiq I. Ali

_____

Tawfiq I. Ali
ALI LAW PRACTICE LLC
200 E. Randolph St. Ste. 5100-24
Chicago, IL 60601
tali@alilawpractice.com
(312) 970-1847