**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NOT DEAD YET MANUFACTURING, INC., d/b/a NDY MFG, INC., <br> Plaintiff, <br> v. <br><br> PRIDE SOLUTIONS, LLC and MAY WES MANUFACTURING, <br> Defendants. | CASE NO. 13-cv-3418 <br><br> Judge Rebecca R. Pallmeyer |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANTS' TECHNICAL EXPERT, DR. FREDERICK T. ELDER**

Defendants' technical expert, Dr. Frederick Elder, offers several opinions in rebuttal to NDY's technical expert that invade the province of this Court, ignore the established law, or are irrelevant to the matters in this case. These opinions should be excluded under Fed.R.Evid. 702.

**I.     Background Facts**

Some of the issues in this case relate to Defendants' infringement of two U.S. Patents: U.S. Patent No. 8,418,432 ("'432 Patent"), and U.S. Patent No. 8,745,963 ("'963 Patent"). Each of the '432 and '963 Patents is directed to quick connect and disconnect stalk stompers. The accused products, which have been referred to in this litigation as the "QD1" and "QD2", are also quick disconnect stalk stompers.

Claim construction proceedings for claim terms and phrases identified by the parties commenced in late 2014. After briefing and oral argument, the Court issued its claim construction decision on October 5, 2015.

On December 4, 2015, NDY served the report of its technical expert, Mr. Larry Johnson, on issues for which NDY bore the burden of proof. Mr. Johnson offered his opinions on: (1) how the accused products infringe the claims at issue; (2) the absence of available, acceptable, non-

infringing alternatives; and (3) how NDY's commercial products are covered by its patents.

On January 6, 2016, Dr. Elder submitted a rebuttal report to Mr. Johnson's report. *Ex. 1*. Dr. Elder's rebuttal report addressed only Mr. Johnson's opinions on Defendants' infringement, and left Mr. Johnson's other opinions unrebutted. On January 29, 2016, NDY deposed Dr. Elder. *Ex. 2*. Expert discovery closed on February 5, 2016.

## II.     Many Of Dr. Elder's Opinions Should Be Excluded Under Fed.R.Evid. 702

NDY does not contend Dr. Elder lacks the relevant background or knowledge to serve as an expert on the relevant technology. As demonstrate below, however, many of Dr. Elder's opinions are so unreliable, irrelevant or both as to not pass muster under Fed.R.Evid. 702.

### A.     Relevant Law

A qualified expert may testify in the form of an opinion "if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702. A judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). This involves asking "whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Illinois Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal quotations omitted). Even with a bench trial the requirements of relevance and reliability must be met. *Seaboard Lumber Co. v. US*, 308 F.3d 1283, 1302 (Fed.Cir. 2002).

Regarding the test for reliability, this is a flexible one and the trial court retains discretion

in choosing how to assess the reliability of the experts' testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999). "The purpose of the inquiry is to vet the proposed testimony under Rule 702's requirements that it be 'based on sufficient facts or data,' use 'reliable principles and methods,' and 'reliably appl[y] the principles and methods to the facts of the case.'" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012), quoting Fed.R.Evid. 702. Regarding the relevance hurdle, expert testimony must assist the fact finder in determining a fact at issue. *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). Expert testimony amounting to legal argument is not admissible. *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012). Also, "expert testimony that contains a legal conclusion that determines the outcome of a case is inadmissible." *RLJCS Ent., Inc. v. Prof'l Ben. Trust Multiple Emp'r Welfare Ben. Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007).

### B. Dr. Elder's Claim Construction Opinions And Conclusions Based Thereon Invade The Province Of This Court And Should Be Excluded

Dr. Elder offers opinions directly or implicitly construing claim language or imposing further limitations on the Court's claim construction language. "[T]he construction of a patent, including terms of art within its claim," is "exclusively" for "the court" to determine. *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384 (1996). Experts are routinely prohibited from offering their claim construction opinions. See, *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 821 (N.D. Ill. 2010). So too should Dr. Elder's claim construction opinions be excluded.

#### 1. Dr. Elder Improperly Construes "Support Member"

Defendants identified for construction the maximum 10 terms or phrases allowed by the Local Patent Rules. *Ex. 3*. Not included was the claim term "support member" found in claims 6 and 7 of the '963 Patent. Defendants initially identified "support member" as a term to be

construed (*Ex. 4*), but withdrew it from their LPR 4.1 statement; thereby waiving their "support member" claim construction arguments. See *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed.Cir. 2007) (failure to raise claim term during claim construction constitutes waiver of any argument on the claim term).

Despite Defendants having waived their arguments on "support member," Dr. Elder attempts to define "support member" in his report as being synonymous with "plate member" from the '432 Patent. *Ex. 1 (yellow boxes) at 44-45, 47-48, 52-53, 56, 59, 63; see also Ex. 2 at 139:6-140:2*. These claim construction opinions for "support member," and his opinions based thereon should be excluded as improperly invading the province of this Court.[1]

### 2. Dr. Elder Inappropriately Attempts To Reargue This Court's Claim Construction For "Plate"

Dr. Elder also rehashes Defendants' claim construction arguments that a bent structure cannot be a "plate," and based thereon, concludes the accused component is not a plate because it is bent. *Ex. 1 at 17-18 (orange boxes)*. The Court rejected this argument when Defendants made it, and held the *claimed* "plate" may contain minor angles and curves. *Ex. 5 at 13*.

Yet, Dr. Elder continues to cling to his belief that something with bends cannot be a "plate," and admitted that his belief impacted his opinion regarding whether the accused so-called "C-channel" satisfied the "plate member" limitation. *Ex. 2 at 124:24-125:14*. Dr. Elder's non-infringement opinions based on his belief that is contrary to this Court's construction should be excluded as unreliable and "irrelevant to issues that will be decided at trial." *Chicago Mercantile Exchange, Inc. v. Tech. Research Gp., LLC*, 782 F.Supp.2d 667, 673 (N.D.Ill. 2011).

---

[1] Dr. Elder's construction is also clearly wrong. Dr. Elder states that for claim terms not construed, he applies the common ordinary meaning. *Ex. 1 at 2, ¶7*. He further admits that the common ordinary meanings for "support" and "plate" are different. *Ex. 2, at 142:5-14*. To the extent this Court is even willing to entertain claim construction arguments, NDY requests an opportunity to demonstrate the legal fallacies of Dr. Elder's claim construction opinions.

4

The impropriety of Dr. Elder's attempt to revisit the claim construction for "plate" is made even worse by the fact that a key underlying basis for his analysis is a fallacy. Dr. Elder bases his analysis that something bent cannot be a plate on ASTM-A370-14:

> …ASTM-A370-14 at paragraph 4.1 says in pertinent part, "Testing for ASTM standard and material properties are for plate, sheet and strip. *Because bending may 'affect the properties of the material under test', a bent part can no longer be defined as a plate per commonly accepted standards*."
>
> In short, a plate has certain physical properties and *as ASTM points out*, bending that plate may change the material properties and the "...*bent part can no longer be defined as a plate*…"

*Ex. 1 at 17* (italics added). Dr. Elder's "quotes" of paragraph 4.1 prove to be pure fiction.

Because Defendants did not produce Dr. Elder's cited ASTM sections with his report, NDY requested their production. In response, Defendants produced some ASTM sections, but failed to produce cited paragraph 4.1 or any other section with the supposed quote. During Dr. Elder's deposition, NDY attempted to discover where the supposed quote was found, and Dr. Elder asserted it was in the unproduced paragraph 4.1.[2] *Ex. 2, 121:9-124:13*. When the ASTM section with paragraph 4.1 was finally produced during the deposition, Dr. Elder had to admit the "quote" did not exist. *Id. at 170:24-171:24; see Ex. 6, ¶4.1*. Dr. Elder blames his misquote on poor typing and misplacement of quotation marks. *Id*. However, he "quoted" the same language *twice*, making his claim of a typo suspect at best. Regardless of whether Dr. Elder's fabrication was intentional or accidental, and whether Defendants suggested, ignored, or did not notice the misquote, it is undeniable Dr. Elder's improper claim construction is based on make believe. His opinions simply lack even a scintilla of reliability, and should be excluded.

---

[2] When Dr. Elder offered to obtain the document with paragraph 4.1, Defendants implied they did not produce it because of a "copyright" issue. *Ex. 2, 125:18-126:13*. Beyond the fact that such an excuse is legally baseless in view of fair use under copyright law, Defendants' "copyright" excuse is proven illusory by the fact that they have freely copied entire ASTM sections in previous filing with this Court. *Doc. 70*.

### 3. Dr. Elder's "Retention Means"/"Retention Member" Opinions Improperly Disregard Or Add Limitations To The Court's Construction

Dr. Elder bases some of his non-infringement opinions on the terms "retention means" ('432 Patent) and "retention member" ('963 Patent), which were construed as means-plus-function limitations. Dr. Elder ignores many aspects of this Court's construction, and even attempts to add the requirement that the retention means or retention member is limited to a certain shape – a position that Defendants already argued and that this Court rejected.

The Court held the function of the "retention means" is "preventing longitudinal movement of the stalk stomper with respect to the tool bar assembly and preventing the cross bar from disengaging from the recesses in use." *Ex. 5 at 18*. The Court rejected the argument that the retention means must be a particular shape, and held the structure was "a block or stop that retains the position of the stalk stomper with respect to the mounting bracket by restricting the longitudinal movement via engagement with a pin member, and equivalents thereof." *Id. at 19-20*. The Court similarly construed "retention member" noting the construction was consistent with the disclosure of blocks or stops in the form of mounting holes or adjustment holes. *Id. at 23*. Nonetheless, Dr. Elder bases his opinions on the rejected notion that the "stop or block" is limited to particular shapes. *Ex. 2 at 13-15, 19, 41-42, 45-47, 48-49, 54-55, 61-62* (blue boxes).

By way of background, for the QD1, NDY identifies a structure including a pin bushing that receives a pin and prevents longitudinal movement between the stalk stomper and mounting bracket as the stop that meets the claimed retention means/member. See below.



Dr. Elder admits this pin bushing is adapted to engage a pin member, and that the engagement between the pin bushing and the pin prevents longitudinal movement of the stalk stomper with respect to the mount bracket, and prevents the cross bar from disengaging from the recess in use. *Ex. 2, 111:4-112:2*. Despite this, Dr. Elder argues the pin bushing is not a "stop or block" or an equivalent because it prevents movement in multiple directions, whereas the bracket in Fig. 6 prevents movement in only a single longitudinal direction. *Ex. 1 at 14-15, 19, 49*. Dr. Elder also argues the pin bushing would have a different "bearing surface," than that of the bracket depicted in Figure 6. *Ex. 1 at 46 , Ex. 2, 131:15-132:24*. Each of Dr. Elder's arguments is based on the particular shape of the pin bushing as compared to the preferred stop from the patents. Because the construed claims are not limited as to their shape, this is an irrelevant comparison.[3]

The claimed retention means and retention member "prevent[s] longitudinal movement of the stalk stomper with respect to the tool bar assembly and prevent[s] the cross bar from disengaging from the recess in use." *Ex. 5 at 18*. Whether the pin bushing of the accused QD1 product also prevents movement in other directions is legally irrelevant. "That two structures may perform unrelated – and, more to the point, unclaimed – functions differently or not at all is simply not pertinent to the measure" of equivalents of a means-plus function claim term. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1271 (Fed.Cir. 1999). Further, the specific "bearing surface" of the stop or block is also irrelevant for at least the reason that the claims as construed include no such limitation, and more importantly, because Dr. Elder's "bearing surface" argument concerns the interface between the surfaces of two components, which depend on their

---

[3] Dr. Elder also testified as to his understanding of the law regarding what structures are covered by a means-plus-function limitation that demonstrates that he simply applied the wrong law. As a matter of law, structures covered by a means-plus-function limitation include structures disclosed in the specification and equivalents thereof. *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed.Cir. 2012). Dr. Elder, however, testified that he understood that an "equivalent" had to be disclosed in the specification. *Ex. 2, 84:6-85:18*. This interpretation obviously is incorrect.

respective shapes – a limitation rejected by this Court. *Ex. 2, 131:17-132:24*. At its heart, Dr. Elder's opinions amount to an improper attempt to revive Defendants' argument that the "retention means" must be a particular shape. See *The Medicines Co., v. Mylan Inc.*, No.11–cv–1285, 2014 WL 1979261 at *6 (N.D.Ill. May 15, 2014) (excluding attempt to argue claim construction under guise of conducting second step of infringement analysis).

With regard to the QD2 stalk stomper, Dr. Elder tries to add a further limitation to the Court's definition of "retention member" ('963 Patent) by requiring that it be a separate component from the "support member." *Ex. 1 at 62*. Not only must Dr. Elder's attempt at claim construction be excluded as invading the province of this Court, it is also plainly wrong. The claim, on its face, states that the "support member" includes several features including a retention member, i.e., the retention member is part of the support member. *Ex. 7, claim 6*.

### C. Dr. Elder's Doctrine Of Equivalents Opinions Are Irrelevant Because They Are Based On A Materially Flawed Legal Framework

NDY's expert offers his opinions related to how certain claim limitations in the QD1 and QD2 stalk stompers are met under the doctrine of equivalents. In rebuttal, Dr. Elder offers opinions that are unreliable and irrelevant because they are based on various incorrect applications of the law. *Ex. 1 at 8-13, 16, 19, 27, 30-32, 39-41, 43, 50, 51, 60 (green boxes)*.

Infringement under the doctrine of equivalents may be found when any differences between the claimed invention and the accused product are insubstantial. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854 (1950). Such insubstantiality may be shown by demonstrating that, for a limitation not literally present, the accused product includes a feature that "performs substantially the same function in substantially the same way with substantially the same result…." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed.Cir.2009). "It is the limitations and functions of the invention

described in the claims, not the elements or functions of the accused device, which establish the reference point for the doctrine of equivalents analysis." *Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698, 702 (Fed.Cir. 1990). "[I]nfringement under the doctrine of equivalents is not precluded merely because the accused device performs functions in addition to those performed by the claimed device." *Id*. Despite this legal framework, Dr. Elder bases his doctrine of equivalents opinions on additional unclaimed features of the accused product.

First, Dr. Elder attaches great significance throughout his report on the structural integrity of the component from the accused products NDY alleges to be the claimed "plate member" and "support member," and attempts to distinguish it from the claims based on greater structural integrity. See e.g., *Ex. 1 at 8-10, 30-31, 60*; *Ex. 2 at 95:18-96:7; 99:7-100:6; 124:4-125:10; 128:24-129:25*. Dr. Elder's structural integrity opinions should be excluded first because structural integrity is not claimed or even discussed anywhere in the patents; a fact Dr. Elder even admits. *Ex. 2, 160:4-7*. Thus, the structural integrity of the accused product is irrelevant to the doctrine of equivalents analysis. *Insta-Foam*, 906 F.2d at 702. Next, Dr. Elder improperly compares the accused product with a preferred embodiment of the invention by creating a mathematical model based on Figure 6 of the '432 patent, and then comparing the strength of this model with the accused product.[4] *Ex. 1 at 8-9*; *Ex. 2, 161:11-17*. This is fatal to Dr. Elder's analysis given the well-settled law that "[i]nfringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification… but with the properly and previously construed claims in suit." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed.Cir. 1985).

---

[4] Dr. Elder's "structural integrity" analysis also lacks any modicum of scientific reliability. He agrees the structure shown in Fig. 6 inherently has structural integrity. *Ex. 2, 161:3-10*. He does not know, however, what amount of strength is required in actual use, and has no evidence, e.g., tests, on whether the structural integrity of NDY's commercial product is sufficient. *Ex. 2, 160:15-161:2, 162:15-163:1*.

Other of Dr. Elder's opinions again dredge up one of Defendants' already rejected claim construction arguments; this time regarding "pivoting." Dr. Elder tries to differentiate the accused product by stating that it does not "need to pivot" to be mounted to the bracket. *Ex. 1 at 11-12, 16, 27, 29-32, 42-43, 50-51; Ex. 2, 156:5-19*. The Court held "the meaning of the term 'pivoted,' and whether the stalk stomper is pivoted at all, is not integral to the invention." *Ex. 5 at 29*. Thus, pivoting is not a limitation, and whether an accused component needs to be pivoted or not is legally irrelevant. Dr. Elder, however, seems unaware of the Court's claim construction:

> Q: Do you believe [pivoting] to be a limitation?
> A: Let me look at the '432 claim real quickly if you don't mind.
> Q: Go ahead.
> A: It clearly states that the stalk stomper is pivoted so that the plate member is above the pair of holes and the pin can be inserted. So I think the pivoting and being above the pair of holes is certainly part of the claim.
> Q: And is that what went into your determination that that's one of the functions of the plate member?
> A: Yes.

*Ex. 2, 155:6-155:15*. He further testified: "[t]he reason I talk about pivoting is because it's clearly part of the claim. And so I wanted to help distinguish that the QD1 did not need that pivot function." *Id. at 156:16-19*. Dr. Elder either fails to grasp or simply ignores this Court's claim construction. Regardless of which, his opinions based on the rejected argument that "pivoting" is a limitation must be excluded.

Beyond the legal impropriety of Dr. Elder's "pivoting" arguments, they are actually nothing more than an exercise in sophistry. From the beginning, Defendants' pivoting arguments were ill-conceived in view of their own documents instructing users to place the cross bar in recesses and then to pivot the assembly into position. *Ex. 8*. Dr. Elder conceded these documents instructed users to pivot the stalk stomper during assembly. *Ex. 2, 163:4164:3; 165:16-166:17*. When Defendants' counsel attempted to rehabilitate Dr. Elder on re-direct, he testified: "When I

10

looked at the device, you can put it together and it can pivot some, but it's a relatively few degrees. You can also put it together as a pivot, as the instructions point out." *Ex. 2, 175:22-176:6*. As he admits, after inspecting the accused QD1, Dr. Elder recognized that the stalk stomper assembly could be pivoted into place, just as Defendants' documents state. Nonetheless, Dr. Elder strains to conform to Defendants' "pivoting" argument by claiming there is no "need to pivot." Dr. Elder's misleading opinions regarding the hypothetical possibility that one could assemble the accused product without pivoting are utterly irrelevant and unreliable.

Other opinions are also demonstrated to be wholly unreliable by yet another misleading contention that the QD1 and QD2 lack the claimed plate and support members because they do not need a pin to hang the stalk stomper assembly from the mounting bracket. *Ex. 1 at 12-13; Ex. 2, 117:10-118:6*. In the first place, such an opinion is legally irrelevant and should be excluded, because what matters is the accused product in a fully assembled, not partially assembled form, as demonstrated by the Court's claim construction speaking to the need of the pin to engage a retention means "in use." *Ex. 5 at 18*. Dr. Elder's opinion is akin to contending that a car wheel does not need lug nuts because one can put the wheel on the bolts and not have the wheel fall off when the car is stopped. Such opinions based on a non-operational, partially assembled condition, are irrelevant. More importantly, Dr. Elder admits that the QD1 and QD2 actually require a pin to keep them assembled "in use." *Ex. 2, 117:10-118:6; 119:13-120:3*. Amusingly, when presented with Defendants' document, which states: "Without the quick disconnect pin in place the stalk stomper assembly may detach from the combine head unexpectedly," and asked whether it confirmed his admission that a pin is required in use, Dr. Elder still waffled and stated: "Yes. I don't know if it confirms it, but it agrees with what I said." *Id. 165:7-15*.

11

### D. Some Of Dr. Elder's Opinions Are Irrelevant In That They Do Not Even Pertain To Plaintiff's Infringement Contentions

In some instances, rather than address NDY's contentions, Dr. Elder erects a straw man argument. *Ex. 1 at 10, 19-20, 39 (purple boxes)*. For example, regarding the "plate member" limitation, NDY identified for the QD1 the component shown on the left below in yellow as constituting or including the plate member.



Dr. Elder, however, discusses a part welded on the end of the accused plate member, and argues the accused plate member is not a single piece. *Ex. 1 at 9-10, 39*. NDY does not even identify the welded part as part of the plate member. Also, the welded part is a structure to attach a limiting chain to the plate member, a feature separate from the plate member that is also depicted in the preferred embodiment from the '432 Patent. See red circle in right hand figure above. This welded part is factually irrelevant.[5]

The utter lack of reliability with Dr. Elder's opinions is further demonstrated by his willingness to make scientifically absurd arguments. For example, Dr. Elder argues that the retention means/retention member limitations are not met because the accused products have "holes," which are the absence of something, and therefore cannot be the claimed structure. *Ex. 1*

---

[5] Dr. Elder's fabricated argument is also legally baseless. Claim 1 of the '432 Patent is a "comprising" claim. As such, the claim includes at least what is recited, but may include more, e.g., the welded part. *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed.Cir. 2005).

*at 13, 33 (purple boxes).* As Dr. Elder admits, however, holes must be defined by some surrounding structure. *Ex. 2, 168:11-169:1*. It is this surrounding structure, not the hole defined thereby, that NDY contends are the retention means. Dr. Elder's argument is merely to cause confusion as demonstrated by his admissions that the actual structures identified by NDY for the claimed retention means/member do in fact restrict longitudinal movement of the stalk stomper relative to the mounting bracket on the tool bar in use through engagement with a pin member. *Ex. 2, 168:11-170:23; 130:7-131:14*.

Lastly, with the QD1, NDY identified the retention means as including the pin bushing. Despite this, Dr. Elder disregards the pin bushing and describes the QD1 as having "cooperating holes that align with the holes of the bracket for receiving a pin." *Ex. 1 at 13 (light blue)*. Dr. Elder's description of the QD1 simply does not exist. Instead, in all instances the QD1 includes a pin bushing. *Ex. 2, 170:5-23*. Dr. Elder's analysis of a hypothetical, as opposed to the actual accused product, is irrelevant.

### E. Dr. Elder Improperly Opines On The Law Of The Doctrine Of Equivalents

It is undeniably improper for Dr. Elder to opine on the law. Yet, he opines that Mr. Johnson's doctrine of equivalents positions are legally flawed by arguing that Mr. Johnson groups several claim limitations together to support his infringement contention under the doctrine of equivalents. *Ex. 1 at 36, 43, 59, and 63 (red boxes)*. As an initial matter, it is incorrect that Mr. Johnson grouped claim limitations together. Regardless, Dr. Elder is completely incompetent to offer any opinion on the law.

### F. Dr. Elder's Infringement Analysis Methodology Is Contrary To Law

Ironically, it is actually Dr. Elder's infringement opinions that suffer from a failure to follow a correct legal analysis, which renders his opinions irrelevant and unreliable. It is well-

13

settled that the test for infringement requires a comparison of the patent claims as construed with the accused product, and that comparing a commercial or preferred embodiment of the invention with the accused product is legally improper. *SRI Int'l*, 775 F.2d at 1121. As mentioned above with respect to Dr. Elder's analysis of whether the accused QD1 met the "plate member" limitation, Dr. Elder compared computer-aided designs (CAD) of the accused component with a CAD drawing of Fig. 6 from the '432 Patent to evaluate the irrelevant issue of their structural integrity. *Ex. 1 at 6 (pink box), see also p. 14 (pink box)*. Similarly, with respect to the accused QD2 stalk stomper, Dr. Elder again compares a CAD drawing of a figure from the '963 Patent with the accused product. *Ex. 1 at 52 (pink box)*. This comparison of the accused product with a mockup of the preferred embodiment is decidedly legally improper. *SRI Int'l*, 775 F.2d at 1121.

Dr. Elder also relies on Fig. 6 from the '432 Patent as part of his irrelevant "pivoting" arguments (discussed above). *Ex. 1 at 11, 27, 43 (pink box)*. Dr. Elder argues that the embodiment shown in Fig. 6 must be pivoted, and therefore, in order to infringe, an accused device must be pivoted. Not only is Dr. Elder's comparison of the accused product with the preferred embodiment wrong as a matter of law, Dr. Elder's "pivoting" comparison is also legally irrelevant in view of the claim construction expressly holding that pivoting is not a limitation.

Also, with respect to the claimed "retention means," Dr. Elder's analysis compares the pin bushing of the QD1with the preferred embodiment of the retention means from the '432 Patent. *Ex. 1 at 46 (pink), Ex. 2, 131:15-132:24*. Dr. Elder's comparison of a preferred embodiment with the accused product is legally impermissible. Worse yet, Dr. Elder's opinions fly in the face of this Court's express determination that the claimed retention means was not limited to a specific shape. *Ex. 5 at 19*. Dr. Elder's opinions are therefore unreliable and irrelevant.

14

**III.    Conclusion**

An expert's opinion must be both relevant and reliable. Many of Dr. Elder's opinions fail on both points. Dr. Elder repeatedly demonstrates a willingness to say just about anything, and will not let mere facts, such as Defendants' documents, the actual structure and operation of the accused products, the actual text of ASTM standards, or basic scientific principles stop him. Dr. Elder also ignores the relevant law, including: the test for infringement, the law on the doctrine of equivalents, and this Court's claim construction. Dr. Elder may be technically qualified, but his opinions identified herein lack the requisite reliability and relevance to be admissible, and should be excluded by this Court.


Date: March 7, 2016                                 Respectfully submitted,

                                                    By:   /s/ Joseph M. Kuo
                                                        Joseph M. Kuo
                                                        Arnstein & Lehr LLP
                                                        120 South Riverside Plaza, Suite 1200
                                                        Chicago, IL 60606
                                                        Tel. (312) 876-7151
                                                        Fax (312) 876-6282
                                                        jmkuo@arnstein.com

                                                        Attorney for Plaintiff,
                                                        NOT DEAD YET
                                                        MANUFACTURING, INC.

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 7, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

      Dustin R. DuFault
      DuFault Law Firm, P.C.
      Ten South Fifth Street
      700 Lumber Exchange Building
      Minneapolis, MN 55402
      Tel. (952) 935-4392
      DDufault@DuFault-Law.com

      Tawfiq Ali
      Ali Law Practice, LLC
      200 East Randolph Street
      Suite 5100-24
      Chicago, IL  60601
      Tel. (312) 970-1847
      Tali@alilawpractice.com

      Craige O. Thompson
      Thompson Patent Law Offices, PC
      4900 Place
      4900 Highway 169 North
      Suite 315
      New Hope, MN 55428
      Tel. (763) 557-4909
      craige@thomsonpatentlaw.com

      Attorneys for Defendants
      PRIDE SOLUTIONS, LLC and
      MAY WES MANUFACTURING

                                              s/ Joseph M. Kuo