**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NOT DEAD YET MANUFACTURING, INC., d/b/a NDY MFG, INC.,<br>　　　　　　　　　　　Plaintiff,<br>　　v.<br><br>PRIDE SOLUTIONS, LLC and MAY WES MANUFACTURING,<br>　　　　　　　　　　　Defendants. | CASE NO.　13-cv-3418<br><br>Judge Rebecca R. Pallmeyer |

**NOT DEAD YET MANUFACTURING'S STATEMENT OF MATERIAL
FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(a)(3), Plaintiff, Not Dead Yet Manufacturing, submits this Statement of Material Facts for which NDY contends there is no genuine issue, and that entitles it to judgment as a matter of law on certain issues in this case.

**Description Of The Parties**

1.　Plaintiff, Not Dead Yet Manufacturing, Inc. ("NDY"), is an Illinois corporation having its principal place of business at 4590 N. 11000 W. Road, Bonfield, IL 60913. *Doc. 52, ¶1*.

2.　One of the Defendants, Pride Solutions, LLC, is a company organized under the laws of Minnesota and has an office address of 16057 673rd Ave, Hutchinson, MN 55350, and a principal place of business at 120 Eastgate Drive SE, Hutchinson, MN 55350, and the other Defendant, May Wes Manufacturing, is a division of Pride Solutions, LLC. *Doc. 120, ¶¶ 2,3*.

**Jurisdiction and Venue**

3.　This Court has subject matter jurisdiction over the issues in this case for the following reasons:

      a.      With regard to Counts I and V for patent infringement, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. *Doc. 120, ¶ 5.*

      b.      With regard to Count II for false advertising under the Lanham Act, his Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331. *Doc. 120, ¶ 7.*

      c.      With regard to Counts III and IV for false advertising and unfair competition under Illinois state law, this Court has subject matter jurisdiction pursuant to 35 U.S.C. § 1367(a). *Doc. 120, ¶ 9.*

4.      This Court has personal jurisdiction over each of the defendants by virtue of the fact that defendants filed an Answer and Counterclaims in this matter. *Doc. 120, ¶ 11*.

5.      Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b). *Doc. 52, ¶12*.

## Background Facts

6.      One of the patents in suit, U.S. Patent 8,418,432 ('432 Patent), was filed as application serial no. 13/135,944 on July 19, 2011, was issued on April 16, 2013, and is owned by way of assignment by NDY. Ex. A; Ex. Q.

7.      One of the patents in suit, U.S. Patent 8,745,963 ('963 Patent), was filed as application serial no. 13/927,353 on July 26, 2013, was issued on June 10, 2014, is owned by way of assignment by NDY, and claims priority to the July 19, 2011 filing date for the '432 Patent. Ex. B, Ex. Q.

8.      A quick disconnect stalk stomper manufactured, sold and offered for sale by Defendants, referred to in this litigation as the QD1, is alleged to infringe claim 1 of the '432 Patent since at least April 16, 2013 and claims 6 and 7 of the '963 Patent since at least February 10, 2015. Doc. 52, ¶¶ 56-67, 96-107.

**Facts Related to The Accused QD1**

9. The figures shown below are representative of Defendants' QD1 product for New Holland 96C, 96D, 98C, 98D & 996, and depict in the left hand figure a component labeled as "2.1," which Defendants' document refers to as a "shoe bracket," and that connects (as shown in the figure on the right, reference numbers added) to a component labeled as "1," which Defendants' document refers to as a "header bracket."



Ex. J, P00001-30; Ex. V, responses 32 and 33.

10. Each of Defendants' QD1 products literally meets the claim limitation "a stalk stomper shoe having a first end" from claim 6 of the '963 Patent. Ex. C, ex. 3; Ex. J, P00001-30; Ex. D, Attachment 2.

11. Each of Defendants' QD1 products literally meets the claim limitation "a detachable bracket member adapted to be attached to a combine, the bracket member including a first and a second arm member, the first and second arm members spaced a first distance, each of the first arm member and the second arm member defining a recess, the first arm member recess and the second arm member recess being transversely aligned, each of the first and second arm members further defining a hole spaced from the recesses, the holes of the first and

3

second arm members being generally transversely aligned" from claim 6 of the '963 Patent. Ex. C, ex. 3; Ex. J, P00001-30; Ex. D, Attachment 2.

12. Each of Defendants' QD1 products literally meets the claim limitation "a pin member configured to be received within the first and second arm member holes" from claim 6 of the '963 Patent. Ex. C, ex. 3; Ex. J, P00001-30; Ex. D, Attachment 2.

13. Each of Defendants' QD1 products includes a stalk stomper assembly including a stalk stomper shoe and a component referred to in Defendants' documents as a "shoe bracket" (shown below colored yellow). Ex. J, P000001-30; Ex. D ¶25.



14. The shoe bracket of each of Defendants' QD1 products includes a crossbar adapted for receipt into a first arm recess and a second arm member recess of a bracket member. Ex. J, P000001-30; Ex. C, ex. 3; Ex. D ¶27.

15. The shoe bracket of each of Defendants' QD1 products bears some or all the weight of other components like the stalk stomper shoe. Ex. J, P000001-30; Ex. D ¶22-25.

16. The shoe bracket of each of Defendants' QD1 products includes a first sidewall member and a second sidewall member, the first and second sidewall members being in generally parallel alignment, each sidewall member defining an aperture adapted to receive a bolt member for connecting with the first end of the stalk stomper shoe, the first and second sidewall members being spaced a second distance where the second distance is less than the first distance such that the first and second sidewall members are adapted to be positioned between

4

the first and second arm members of the bracket member. Ex. J, P000001-30; Ex. C, ex. 3; Ex. D ¶29.

17. Each of Defendants' QD1 products includes a component referred to in Defendants' documents as a "pin bushing," which is affixed to a "shoe bracket body", and is adapted to receive a pin member through a central passage.



Ex. J, P000001-30, P001359; Ex. R, 89:22-90:20; Ex. S, 53:24-54:13; Ex. D, ¶ 33-36; Ex. F, 159:9-13; 170:18-23.

18. The pin bushing of each of Defendants' QD1 products is adapted such that when the shoe bracket and the bracket member are in an operational configuration, the pin member is positioned within the holes of the first and second arm member and, in use, engages the pin bushing and restricts longitudinal movement of the shoe bracket relative to the bracket member. Ex. D, ¶ 33-36; Ex. J, P000001-30; Ex. F, 110:13-112:2.

19. The shoe bracket of each of Defendants' QD1 products is operatively connected to a spring member. Ex. J, P000001-30; Ex. C, ex. 3; Ex. D, Attachment 2.

20. Each of Defendants' QD1 products includes the limiting member of claim 7. Ex. J, P000001-30; Ex. C, ex. 3; Ex. D, Attachment 2.

21. Each of Defendants' QD1 products includes a tool bar assembly comprising a bracket having a pair of spaced-apart arm members depending therefrom, each having a recess therein, the recesses being generally transversely aligned, and a pair of holes in the bracket

5

spaced from the recesses, the pair of holes being generally transversely aligned. Ex. J, P000001-30; Ex. C, ex. 1; Ex. D, Attachment 2.

22. Each of Defendants' QD1 products includes a pin adapted to be received in the holes of the bracket. Ex. J, P000001-30; Ex. C, ex. 1; Ex. D, Attachment 2.

23. Each of Defendants' QD1 products includes a component shown below in yellow that comprises a single smooth sheet of steel (referred to herein as the "Accused Plate Member.").



Ex. J, P000001-30, P001359; Ex. D, ¶ 45.

24. For each of Defendants' QD1 products, the Accused Plate Member includes a cross bar formed thereon that is adapted to be received in the recesses in the depending arm members on the tool bar assembly. Ex. J, P000001-30; Ex. D, ¶62.

25. For each of Defendants' QD1 products, the material of the Accused Plate Member has a thickness of approximately ¼ inch. Ex. J, P001359; Ex. D, ¶75.

26. For each of Defendants' QD1 products, each transverse hole in the Accused Plate Member is adapted to receive a pin bushing and defines an annular surface of approximately ¼ inch in width. Ex. J, P001359; Ex. D, ¶75.

27. For each of Defendants' QD1 products, the pin bushing is positioned within transversely aligned holes of the sidewalls of the Accused Plate Member, contacts each of the

annular surfaces, and is welded in place. Ex. J, P001359; Ex. D, ¶75.

28. For each of Defendants' QD1 products, a pin bushing is physically in contact with and supported by a surface of the plate member. Ex. J, P001359; Ex. D, ¶75.

29. When the QD1 product is fully assembled a substantial portion of the shoe bracket is in a higher place than the holes in the arm members of the mount bracket (referred to in Defendants' document as a "header bracket"). See Fig. below with orange portions being "above the holes."



Ex. J, P000001-30; Ex. D, ¶80-84.

30. When the QD1 product is fully assembled approximately two-thirds of the material of the accused plate member is positioned above the mount bracket holes when the pin is inserted. Ex. J, P000001-30; Ex. D, ¶80-84.

31. When the QD1 product is fully assembled and in use, the pin member engages the pin bushing and prevents the stalk stomper from moving longitudinally relative to the mount bracket and falling out vertically from the mounting bracket. Ex. J, P000001-30, P001359, Ex. S, 66:5-17; Ex. D, ¶ 35-36, 71-73; Ex. F, 159:9-13; 170:18-23; Ex. V, Response to RFA 39.

32. Defendants do not have any internal documents that refer to the Accused Plate Member component as a "C-channel." Ex. D, ¶60.

33. Defendants designate the component (shown below in orange) as a "mount plate."

7



Ex. J, PRIDE_E 009808; Ex. D, ¶ ___; Ex. F, 153:4-23.

34. The component shown in orange in SF 33 that Defendants term a "mount plate" has at least substantially the same bends as the Accused Plate Member. Ex. J, PRIDE_E 009808, P000001-30; Ex. D, ¶ 58; Ex. F, 153:4-23.

35. The term "plate" may be used by people in the mechanical arts to describe a component of a sheet of material that includes bends or angles of approximately 90 degrees. Ex. F, 146:12-148:8; 150:1-153:23; Ex. U; Ex. J, PRIDE-E 009808.

36. U.S. Patent 5,890,871, which was prior art of record in the patents in suit and cited by this Court in its claim construction, uses the term "plate" to refer to a component having a bend or angle of approximately 90 degrees. Ex. D, ¶50; Ex. T, Figs. 1 and 2, col. 2:46-47.

37. A function of the claimed plate member is to mount with the bracket and to support the other components of the stalk stomper assembly, such as the cross bar, retention means, and stalk stomper shoe. Ex. D, ¶61-64; Ex. A, col. 3, ll. 15-38.

38. A function of the Accused Plate Member of the QD1 product is to mount with the bracket and to support the other components of the stalk stomper assembly. Ex. J, P000001-30; Ex. D, ¶61-64.

39. The bends in the Accused Plate Member do not negatively affect its ability to mount with the bracket or to support the other components of the stalk stomper assembly. Ex. D, ¶54.

40. Defendants described the assembly of the QD1 with the following:



Ex. J, NDY 1302.

41. The way in which the Accused Plate Member of the QD1 connects to the mount bracket is by placing a cross bar formed therewith into recesses, aligning the pin bushing through-passage with transverse holes in the mount bracket, and inserting a pin into the transversely aligned holes and through the pin bushing through-passage. Ex. J, NDY 1302, P000001-30; Ex. D, ¶68.

42. When assembled, the stalk stomper assembly is prevented from disengaging from the mount bracket in part by the pin member engaging the pin bushing. Ex. J, P000001-30; Ex. S, 66:5-17; Ex. D, ¶ 35, 36, 73; Ex. F, 159:9-13; 170:18-23; Ex. V, Response to RFA 39.

43. Failure to insert the pin member into the transversely aligned holes and through the pin bushing through-passage will result in the stalk stomper assembly disengaging from the mount bracket during use. Ex. J, P000001-30; Ex. S, 66:5-17; Ex. D, ¶ 35; Ex. F, 159:9-13; 170:18-23; Ex. V, Response to RFA 39.

**Facts Related To Defendants' Anticipation And Inequitable Conduct Defense**

44. On or about June 11, 2012, NDY filed patent application serial no. 13/493,078 as a continuation in part application of application no. 13/135,944, claimed priority to application no. 13/135,944, and included a cross reference to related applications in the specification that identified application no. 13/135,944. Ex. W.

45. On or about March 14, 2013, NDY filed patent application serial no. 13/827,625 as a continuation in part application of application no. 13/493,078, claimed priority to application nos. 13/493,078 and 13/135,944, and included a cross reference to related applications in the specification that identified application nos. 13/493,078 and 13/135,944. Ex. X.

46. On or about June 26, 2013, NDY filed patent application serial no. 13/927,353 as a continuation application of application no. 13/827,625, claimed priority to application no. 13/827,625, and included a cross reference to related applications in the specification that identified application nos. 13/827,625, 13/493,078 and 13/135,944. Ex. B, col. 1:7-15.

47. NDY intended at the time of filing of patent application serial no. 13/927,353 to claim priority to an earlier parent application, namely, application no. 13/135.944. Ex. Y, ¶9; Ex. O at 49:9-51:8; Ex. P.

48. NDY inadvertently failed to identify application nos. 13/493,078 and 13/135,944 in the '963 Patent Application Data Sheet. Ex. Y, ¶11; Ex. O at 49:9-51:8; Ex. P.

49. On June 26, 2014, NDY served Defendants with its Local Patent Rule 2.2 Initial Infringement Contentions and stated that NDY believed that the effective filing date for the '963 Patent was the filing date of the '432 Patent, i.e., July 19, 2011. Ex. Z.

50. On July 25, 2014, Defendants filed their Answer to the Second Amended Complaint and alleged, inter alia, invalidity of the '963 Patent based on early sales of the NDY stalk stomper and QD1 stalk stomper, and alleged that the effective filing date for the '963 Patent was that of application no. 13/827,625, i.e., March 14, 2013. Doc. 54 at 27.

51. NDY did not realize that the '963 Patent application did not claim priority to the filing date of the '432 Patent until shortly after Defendants filed their Answer to the Second Amended Complaint. Ex. Y, ¶7; Ex. P.

52. On July 31, 2014, NDY submitted, inter alia, a petition with the United States Patent and Trademark Office seeking to correct the claim of priority. Ex. P.

53. On February 10, 2015, the United States Patent and Trademark Office issued a Certificate of Correction for the '963 Patent, which corrected the priority claim therefor to the earliest filing date for the '432 Patent, i.e., July 19, 2011. Ex. B, Certificate of Correction.

54. NDY did not disclose the Early Sales information to the PTO is because NDY believed priority had been claimed to the earlier '432 Patent application, and thus, believed these sales were not prior art. Ex. Y, ¶8.

55. Mr. Shoup and NDY always intended with the '963 Patent application to claim priority to the filing date for the earliest '432 Patent application, and the failure to claim priority when the application was filed was due to an error. Ex. Y, ¶11.

56. Mr. Shoup did not realize the error had occurred during the pendency of the '963 Patent application. Ex. Y, ¶7.

57. It was Mr. Shoup's practice to claim priority to the earliest in a chain of applications. Ex. Y, ¶10.

58. No sales of an NDY quick disconnect stalk stomper were made prior to July 19, 2010. Ex. Y, ¶3; Doc. 1, ¶13.

59. No sales of Defendants' QD1 stalk stomper were made prior to June 2011. Ex. AA, 31:8-22.

60. Application serial no. 13/135,944 to which the '963 Patent claims priority, discloses a stalk stomper shoe having a first end at least by the following figure (relevant component highlighted). Ex. M, Fig. 6; Ex. D, ¶ 111-115.



61. Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a detachable bracket member that adapted to be attached to a combine, that includes first and second arm members, which: are spaced a first distance; include transversely aligned recesses; and define transversely aligned holes spaced from the recesses. Ex. M, Fig. 6; Ex. D, ¶ 111-115.



62. Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a pin member configured to be received within the first and second arm member holes. Ex. M, Fig. 6; Ex. D, ¶ 111-115.



63. Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a component that bears some or all the weight of other components. Ex. M, Fig. 6; Ex. D, ¶ 111-115.



64. Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a support member including a crossbar adapted for receipt into the recesses. Ex. M, Fig. 6; Ex. D, ¶ 111-115.



65. Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a support member including: a first sidewall member and a second sidewall member, the first and second sidewall members being in generally parallel

14

alignment, each sidewall member defining an aperture adapted to receive a bolt member for connecting with the first end of the stalk stomper shoe, the first and second sidewall members being spaced a second distance where the second distance is less than the first distance such that the first and second sidewall members are adapted to be positioned between the first and second arm members of the bracket member. Ex. M, Fig. 6; Ex. D, ¶ 111-115.



66. Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a support member including a retention member, the retention member adapted such that when the support member and the bracket member are engaged the pin member is positioned within the holes of the first and second arm member and engages the retention member of the support member to restrict longitudinal movement of the support member relative to the bracket member. Ex. M, Fig. 6; Ex. D, ¶ 111-115.



67.     Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a spring member operatively connected with the support member and the stalk stomper shoe. Ex. M, Fig. 6; Ex. D, ¶ 111-115.



68.     Application serial no. 13/135,944 discloses at least with the following figure (relevant component highlighted) a limiting member. Ex. M, Fig. 6; Ex. D, ¶ 111-115.

16



69. NDY's stalk stomper sold in August 2010 was substantially identical in configuration to the stalk stomper shown in the Figures of Application serial no. 13/135,944. Ex. M, Fig. 6; Ex. N; Ex. Y, ¶4.


Date: January 13, 2017            Respectfully submitted,

                                         By:  /s/ Joseph M. Kuo
                                                   Joseph M. Kuo
                                                   Arnstein & Lehr LLP
                                                   120 South Riverside Plaza, Suite 1200
                                                   Chicago, IL 60606
                                                   Tel. (312) 876-7151
                                                   Fax (312) 876-6282
                                                   jmkuo@arnstein.com

                                                   Attorney for Plaintiff,
                                                   NOT DEAD YET
                                                   MANUFACTURING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Dustin R. DuFault
>DuFault Law Firm, P.C.
>Ten South Fifth Street
>700 Lumber Exchange Building
>Minneapolis, MN 55402
>Tel. (952) 935-4392
>DDufault@DuFault-Law.com
>
>Tawfiq Ali
>Ali Law Practice, LLC
>200 East Randolph Street
>Suite 5100-24
>Chicago, IL  60601
>Tel. (312) 970-1847
>Tali@alilawpractice.com
>
>Craige O. Thompson
>Thompson Patent Law Offices, PC
>4900 Place
>4900 Highway 169 North
>Suite 315
>New Hope, MN 55428
>Tel. (763) 557-4909
>craige@thomsonpatentlaw.com
>
>Attorneys for Defendants
>PRIDE SOLUTIONS, LLC and
>MAY WES MANUFACTURING

              s/ Joseph M. Kuo