UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOT DEAD YET MANUFACTURING INC., d/b/a NDY MFG, ING. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 13 C 3418<br>) |
| PRIDE SOLUTIONS, LLC and MAY WES MANUFACTURING, | ) Judge Rebecca R. Pallmeyer<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

At issue in this case are two United States patents and two allegedly infringing products. Plaintiff Not Dead Yet Manufacturing, Inc. owns U.S. Patent No. 8,418,432 (the "'432 Patent") and U.S. Patent No. 8,745,963 (the "'963 Patent"). Both patents concern "quick connect and disconnect" apparatuses for the assembly of devices known as "stalk stompers"—that is, devices that attach to the front of a combine or tractor to flatten cornstalks after they have been cut. Defendants Pride Solutions, LLC and May Wes Manufacturing produce and sell the allegedly infringing stalk stompers, referred to as the "QD1" and the "QD2," that feature quick-connect-and-disconnect apparatuses. Plaintiff has sued Defendants for infringement; Defendants have filed counter-claims seeking declaratory judgments of invalidity.

The parties filed cross-motions for summary judgment, and the court granted and denied each motion in part. *See Not Dead Yet Mfg. Inc. v. Pride Sols., LLC*, 265 F. Supp. 3d 811 (N.D. Ill. 2017). Plaintiff now seeks reconsideration of nearly every ruling the court made against it. In ruling in Defendants' favor on those issues, Plaintiff contends, the court committed manifest errors of law and fact. Specifically, Plaintiff maintains that the court erred by (1) relying on faulty legal analysis, and disregarding Defendants' failure to timely disclose their invalidity contention, when determining the effective filing date of the '963 Patent; (2) misstating and misapplying controlling precedent when determining that certain arguments Plaintiff made regarding

1

Defendants' QD2 product are foreclosed by the prosecution history of the '432 Patent; (3) relying on evidence the court had already determined to be irrelevant when denying summary judgment on the issue of whether the QD1 infringes the '432 Patent under the doctrine of equivalents; (4) misinterpreting its own claim construction ruling when determining that the QD1 does not literally infringe the '432 Patent; (5) disregarding controlling precedent, as well as Defendants' failure to disclose its contentions, when denying Plaintiff's motion for summary judgment on the issue of inequitable conduct; (6) failing to provide adequate explanation for its denial of Plaintiff's motion to dismiss Defendants' inequitable conduct defense; and (7) improperly resolving questions of fact when ruling on Defendants' claim for false advertising under the Lanham Act.

As explained below, the court concludes that it did make certain factual errors, and that certain portions of the ruling that Plaintiff highlights require a more precise legal analysis than what the court provided. The court thus takes this opportunity to correct those errors of fact and clarify its legal analysis. The court concludes, further, that to the extent the court appeared to grant summary judgment in Plaintiff's favor on the issue of the effective filing date for the '963 Patent, it is inappropriate to make such a determination as a matter of law and therefore amends that ruling. Beyond these matters, however, Plaintiff has not identified any manifest errors of law or fact that would warrant different rulings on any of the matters in dispute. The court therefore denies Plaintiff's motion for reconsideration [183].

## **DISCUSSION**

A party's disagreement with a court's ruling is not an adequate basis for reconsideration. Rather, to prevail on a motion to reconsider, the moving party "must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). In this context, "manifest error" of law means "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* "It is well established that a motion to reconsider is only appropriate where a court has misunderstood a

party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). For purposes of this opinion, the court assumes familiarity with the background facts of the case, as set forth in the court's summary judgment ruling. *See Not Dead Yet*, 265 F. Supp. 3d at 816–24.

## I. Effective Filing Date of the '963 Patent

In its prior ruling, the court rejected Plaintiff's contention that claims 6 and 7 of '963 Patent are entitled to the effective filing date of the '432 Patent. Defendants maintain that their own QD1 product and Plaintiff's first disclosure of its quick-connect-and-disconnect stalk stomper (the "Early Sales") are prior art that anticipate, and therefore invalidate, claims 6 and 7 of the '963 Patent. Plaintiff insists that claims 6 and 7 of the '963 Patent are entitled to the effective filing date of the '432 Patent and that the Early Sales are therefore not prior art because they were disclosed less than one year before that filing date. *See* 35 U.S.C. § 102(b). The court concluded that claims 6 and 7 are not entitled to that earlier filing date and therefore denied Plaintiff's motion for summary judgment on Defendants' anticipation defense.

Defendants maintain that the court correctly declined to grant to claims 6 and 7 of the '963 Patent the effective filing date of the '432 Patent because the application for the '432 Patent does not provide sufficient written description of the invention claimed by the '963 Patent. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) ("[A] patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application[.]"). Specifically, Defendants argue that the application for the '432 Patent provides no support for the "support member" or "bolt member" limitations found in claims 6 and 7 of the '963 Patent. Plaintiff disagrees, contending that the device depicted in Figure 6 of the application for the '432

3

Patent provides an adequate description of both a "support member" and a "bolt member." Plaintiff's expert, Mr. Larry Johnson, explained in his expert report that a preferred embodiment of the claimed "support member" is disclosed in Figures 1 and 6 of the '432 Patent by the component referred to as a "plate member" in that Patent. (*See* Decl. of Larry Johnson, Ex. D to Pl.'s Stmt. of Mat. Facts [152-5] (hereinafter "Johnson Decl."), ¶ 112 (highlighting the claimed "plate member" in yellow and opining that a "preferred embodiment of the claimed 'support member' is disclosed by the component shown in yellow").)

In its prior ruling, the court noted that Plaintiff carried the burden of proving that the claims of the '963 Patent were entitled to the earlier filing date. The court concluded that Plaintiff failed to establish that the application for the '432 Patent provided sufficient written description for the "support member" limitation found in the '963 Patent claims. *See Not Dead Yet*, 265 F. Supp. 3d at 835 (citing *PowerOasis*, 522 F.3d at 1305–06). In reaching it conclusion, the court rejected Mr. Johnson's opinion that the plate member depicted in the '432 Patent provided adequate written description for the claimed support member. The court noted that the "support member" claimed in the '963 Patent was intended to be broader than the "plate member" claimed in the '432 Patent. *See id.* (citing specification from the '963 Patent referring to a support member, which *may include* a plate member). Although the depiction in Figure 6 of the '432 Patent may have provided one example of a support member, the court reasoned, it did not disclose the broader class of "support members other than plate members." *Id.* (noting also that a patent applicant chooses the language used in a patent application and that Plaintiff had chosen the broader term "support member" in the claims for the '963 Patent). The court also commented that Defendants' position that the '432 Patent provided inadequate written description for claims 6 and 7 was not at odds with their contention that the Early Sales anticipated those claims. As the court explained, it is possible for a disclosure to anticipate a later claim without providing written description for that claim, such as when prior art discloses one species of a larger genus. In that case, disclosure of the species may anticipate the genus,

4

without providing sufficient written description of the entire genus that is later sought to be claimed. *Id.*

Plaintiff charges that the court committed a number of errors in this analysis. The court erred, according to Plaintiff, by comparing the description in the '432 Patent application to a "support member" in the abstract instead of the "support member" claimed in the '963 Patent. In doing so, Plaintiff argues, the court mistakenly treated a "plate member" as a type or species of "support member," when the support member element is actually described in the '963 Patent as an assembly of features. That assembly may include a plate member as *part* of the support member, Plaintiff explains, but it also must include a crossbar, two sidewall members, and a retention member, among other features. (*See* '963 Patent, Ex. B to Pl.'s Stmt. of Mat. Facts [152-3], cols. 8, l. 58–col. 9, l. 9 (listing support member elements).)

Upon review of the court's opinion, it does appear that the court could have been more precise in describing the relationship between the "plate member" claimed in the '432 Patent and the "support member" claimed in the '963 Patent. The court should not have discussed the claimed plate member as if it, by itself, were a type or species of the claimed support member.[1] It is clear from the specification and claims of the '963 Patent that the claimed support member is a larger assembly that may *include* a plate member. As seen in Figure 10 from the '963 Patent, shown below, the depicted support member (215) is a larger assembly, which includes the plate member (226), cross bar member (229) and pair of sidewall members (225). (*Id.* FIG. 10.) But this clarification of the relationship between a plate member and a support member does not materially change the court's analysis. It remains the case that, to the extent the '432 Patent application describes a "support member"—that is, to the extent it describes an assembly of features including a plate member, cross bar, and sidewalls—it describes just one embodiment of a support member: a support member that includes a plate member.

---

[1] The court notes, though, that this confusion is likely due to the statement of Plaintiff's own expert, Mr. Johnson, that the plate member disclosed in Figure 6 of the '432 Patent was a preferred embodiment of the claimed support member.

FIG. 10



FIG. 10A

Claims 6 and 7 of the '963 Patent, notably, do not require the support member to include a plate member; the description of Figure 10 from the patent specification confirms that the support member *may* (but need not) include a plate member. Thus, to the extent the '432 Patent describes a "support member," it describes a species of support members (those including plate members) that is part of the larger genus of all support members. Indeed, Plaintiff's own expert refers to Figure 6 of the '432 Patent as depicting only *one embodiment* of the claimed support member. The court's species-genus analysis, therefore, remains sound. As the Federal Circuit has explained, "the description of a single embodiment of broadly claimed subject matter constitutes a description of the invention for anticipation purposes, whereas the same information in a specification might not alone be enough to provide a description of that invention for purposes of adequate disclosure." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991) (internal quotation marks and emendations omitted).[2]

Plaintiff argues that the court erred by even considering Defendants' contention regarding the effective filing date of the '963 Patent. Defendants are precluded from making that argument, according to Plaintiff, because they did not identify that aspect of their defense in the invalidity contentions they submitted to Plaintiff. Plaintiff notes that the Local Patent Rules require the submission of "a detailed statement of any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1)." L.P.R. 2.3(b)(4). Plaintiff argues that the Local Patent Rules thus required Defendants to notify Plaintiff of their "written description" invalidity defense. In addition, Plaintiff points out that the court excused Defendants' purported failure to comply with the Local Patent Rules by mistakenly stating that Defendants informed Plaintiff of their effective-filing-date contention by

---

[2] In addition, Defendants contend that the "bolt member" limitation from claims 6 and 7 lacks sufficient written description in the '432 Patent application. Plaintiff argues that the "pivot pin" depicted in Figure 6 of the '432 Patent describes a bolt member because "[a] 'pivot pin' is a preferred type of bolt." (Pl.'s Reply Mem. in Supp. of Mot. for Partial Summ. J.[169] at 11.) But this argument merely provides support for the conclusion that the '432 Patent application describes a single embodiment (a pin) that cannot support the broader class (a bolt).

7

letter before filing their invalidity contentions.

Plaintiff is correct that the court made a mistake: Defendants' counsel sent his letter *after* Defendants had served their invalidity contentions. But the correction of this fact does not alter the court's conclusion that Defendants complied with the Local Patent Rules. Plaintiff simply mischaracterizes Defendants' position as a contention that the '963 Patent is invalid for lack of written description. There is a difference between a contention that a patent is invalid because its specification does not adequately describe or identify the invention, *see* 35 U.S.C. § 112, and a contention that the patent is invalid for anticipation, *see* 35 U.S.C. § 102. Defendants do not contend that the '963 Patent is invalid for lack of written description. Rather, they contend that the '963 Patent is invalid because the Early Sales anticipate the claims in the '963 Patent. It is *Plaintiff* who contends that the Early Sales do not anticipate the '963 Patent because the '432 Patent provides sufficient written description for the claims 6 and 7 in in the '963 Patent, such that those claims are entitled to the same effective filing date as the '432 Patent. As just discussed, Defendants dispute Plaintiff's position that claims 6 and 7 are entitled to that filing date, but Plaintiff cites to no authority suggesting that Defendants were required to anticipate Plaintiff's position in response to their invalidity contentions and provide a reply of their own. When Plaintiff did call into question the basis of Defendants' contention, Defendants readily explained their position on the effective filing date of the patent claims. (*See* Letter from Dustin DuFault, Ex. BB to Pl.'s Stmt. of Mat'l Facts [152-29].) In addition, Defendants filed an answer to Plaintiff's complaint prior to the submission of their invalidity contentions. In that document, Defendants updated their Third Affirmative Defense with the allegation that the effective filing date for any claim of the '963 Patent was March 14, 2013. (Defs.' Answer and Defenses to Pl.'s Supp. to 2d Am. Compl. [141] at 4, ¶ (n).) Plaintiff was therefore on notice of Defendants' contentions and has failed to show any prejudice from the fact that Defendants' position on the effective filing date was not expressly stated in their invalidity contentions.

Plaintiff also contends that the court misstated the law regarding the burden of proof on

the issue of a patent's effective filing date. In its own reply brief in support of its summary judgment motion, Plaintiff stated that it, "as the party asserting the priority date of the '432 Patent, bore the burden of proving entitlement to priority for these claims, i.e., that there was written description for the claimed 'support member.'" (Pl.'s Reply Mem. in Supp. of its Mot. for Part. Summ. J. [169] at 9 (citing *PowerOasis*, 522 F.3d at 1305).) The court also relied on *PowerOasis* for the proposition that the party asserting priority to an earlier filing date has the burden "to come forward with evidence to prove entitlement to claim [that date]." *PowerOasis*, 522 F.3d at 1305–06. As it turns out, the court appears to have mistaken the burden of production with the burden of persuasion. The party asserting priority has the burden to come forward with evidence to prove its entitlement to the earlier filing date, but once the patentee puts forth evidence of that sort, the burden shifts to the patent challenger to provide "clear and convincing evidence" that the patent at issue is not entitled to the benefit of the earlier filing date. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327–28 (Fed. Cir. 2008). The "ultimate burden of persuasion" therefore remains with the challenger. *Id.* at 1328.

Plaintiff did meet its burden of production by presenting the opinion of Mr. Johnson that the '432 Patent provides sufficient written description to support claims 6 and 7 of the '963 Patent. As discussed above, however, evidence from the '963 Patent itself suggests that claims 6 and 7 claim additional material that does not find support in the '432 Patent. A reasonable finder of fact could therefore conclude that there is clear and convincing evidence that claims 6 and 7 are not entitled to the earlier filing date, and the court stands by its ruling denying summary judgment on Plaintiff's anticipation defense. Yet whether a claimed invention is supported by an adequate written description is ordinarily a question of fact. *Id.* at 1332. And the court cannot conclude as a matter of law that clear and convincing evidence requires a finding that claims 6 and 7 lack written description in the '432 Patent. Thus, to the extent the court appeared to rule as a matter of law that the '963 Patent is not entitled to the earlier filing

date, that ruling is vacated. The issue of the effective filing date will be determined at trial.[3]

## II. Prosecution History Estoppel

In its prior ruling, the court concluded that the prosecution history of the '432 Patent precluded Plaintiff from making arguments regarding the QD2's purported infringement of the '432 and '963 Patents under the doctrine of equivalents. *See Not Dead Yet*, 265 F. Supp. 3d at 830–32. Plaintiff maintains that the court's ruling relied on "incorrect law." (Pl.'s Mem. in Supp. of Mot. for Reconsideration [184] (hereinafter "Pl.'s Br.") at 8.) According to Plaintiff, Defendants deliberately mischaracterized controlling precedent by misquoting an opinion from the Federal Circuit; Plaintiff surmises that the court must have arrived at a misapprehension of the law by adopting the statement of the law included in Defendants' brief. In its summary judgment briefing, Plaintiff had contended that the aspects of the prosecution history that Defendants highlighted did not surrender any subject matter creating an estoppel, because they were not the primary arguments Plaintiff had used to distinguish the prior art at issue. The court rejected this argument, noting that whether Plaintiff made arguments in addition to those cited by Defendants was irrelevant. In support of that conclusion, the court quoted the Federal Circuit: "Where a patent applicant sets forth multiple bases to distinguish between its invention and the cited prior art, the separate arguments can create separate estoppels." *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1367 (Fed. Cir. 2007).

Contrary to Plaintiff's conjecture about the way the court drafted its opinion, it did not copy and paste this quotation from Defendants' brief. Rather, it determined for itself that the quotation accurately reflected the law and the Federal Circuit's ruling in *PODS*. Plaintiff maintains that Defendants and the court misrepresented the law by failing to quote the entire sentence from the opinion. *See id.* ("'[W]here a patent applicant sets forth multiple bases to

---

[3] The court was also mistaken, therefore, in inviting Defendants to move for summary judgment on their anticipation defense. Because the court determines in this ruling that the issue cannot be decided as a matter of law, Defendants' motion for partial summary judgment [176] on that defense is stricken.

10

distinguish between its invention and the cited prior art,' 'the separate arguments [can] create separate estoppels' *as long as the prior art was not distinguished based on the combination of these various grounds.*" (emendations in original) (emphasis added) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1581–83 (Fed. Cir. 1995)). The portion of *PODS* quoted in the court's initial opinion states a general rule: separate arguments made during prosecution history can create separate estoppels. The unquoted portion of the sentence provides an exception to that general rule: where a patentee previously contended that a combination of elements makes an invention distinguishable from prior art, the patentee is not estopped from making arguments in the future about one of those elements in isolation. *See also Southwall*, 54 F.3d at 1583 ("Because Read argued that patentability was established by its *combination* of known elements, it created an estoppel only regarding the combined distinctions.") (emphasis in original). The court did not quote that exception to the general rule because it did not believe it applied in this case; indeed, Plaintiff never argued that it applied in this case.

Plaintiff now contends that the exception applies because, during the *inter partes* review of the '432 Patent, it "did not distinguish the prior art based only on isolated claimed features." (Pl.'s Br. at 8.) Instead, Plaintiff argues, it also "distinguished the prior art based on the overall method of the prior art." (*Id.*; *see also id.* (Plaintiff distinguished the prior art based on its "power driven complex set of linkage arms and a hydraulic piston . . ., not just differences between holes and recesses).) Plaintiff appears to misunderstand the exception to the general rule outlined in *Southwall* and *PODS*. That Plaintiff distinguished prior art on multiple grounds, including the prior art's "overall method," does not mean it was making a "combination" argument like the one discussed in *Southwall*. Plaintiff would not be estopped from making arguments distinguishing holes from recesses if its argument during the *inter partes* review was, for example, that its invention's use of holes *in combination with some other element* of the invention made the invention distinguishable from prior art. Plaintiff did not make such an argument in this case. Indeed, it impliedly concedes that it did attempt to distinguish prior art on

11

the basis of "isolated claimed features" in addition to other arguments based on the prior art's overall method. This is precisely the type of case in which "separate arguments can create separate estoppels." *PODS*, 484 F.3d at 1367.[4] The court therefore declines to reconsider its ruling regarding prosecution history estoppel.

### III. No Literal Infringement of the '432 Patent by the QD1

Plaintiff challenges the reasoning underlying the court's conclusion that the QD1 does not literally infringe claim 1 of the '432 Patent. The thrust of Plaintiff's argument is that the court improperly ventured beyond the bounds of its claim construction ruling when conducting its infringement analysis. In the claim construction ruling, the court construed the term "plate member" as "a single smooth thin flat sheet of material that may contain minor angles or curves." *Not Dead Yet Mfg., Inc. v. Pride Sols., LLC*, No. 13 C 3418, 2015 WL 5829761, at *7 (N.D. Ill. Oct. 5, 2015) (emphasis omitted). Plaintiff contends that the so-called "C-Channel" structure found in Defendants' QD1 product constitutes a plate member. The court rejected this argument, concluding that the C-channel's 90-degree angles were not "minor angles or curves." The court's determination was based on the ordinary meaning of "minor" as "slight" or "small," and the court concluded that a 90-degree curve was simply too great to allow a finding that the C-channel contained only minor angles or curves. In the claim construction ruling, the court had effectively anticipated this outcome: the court distinguished a plate from a box-shaped

---

[4] Plaintiff argues that Defendants' manipulation of the quotation from *PODS* is sanctionable. The court has explained why it believes Defendants' use of the quotation was entirely appropriate and thus not deserving of sanctions at all. To the extent that it is sanctionable conduct for an attorney to omit a portion of a quoted phrase or sentence to make the quotation appear more favorable to one's client, Plaintiff's counsel opens himself up to assertions of improper conduct. In its brief in support of the motion for reconsideration, for example, Plaintiff states that a "manifest error of law is also found where there is a 'disregard, misapplication, or failure to recognize controlling precedent.'" (Pl.'s Br. at 1 (quoting *Oto*, 224 F.3d at 606).) The entire quotation from *Oto* is stronger: "[Manifest error] is the *wholesale* disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606 (emphasis added) (internal quotation marks omitted). The court is not opining here that the softening of the standard by Plaintiff's counsel was material or deserving of sanctions; the court notes only that it would be wise for Plaintiff's counsel to exercise more restraint when it comes to charging other attorneys with misconduct.

structure, noting that each side of the structure might be considered a plate although the entire structure would not be considered a plate. Plaintiff argues that the court erred in its infringement analysis by referring to this discussion of a box shape because (1) that discussion was not part of the court's construction of "plate member", and (2) the C-channel is made from a single sheet of steel and is thus distinct from the a box-shape structure containing separate side pieces.

But the court's infringement analysis did not incorporate its prior discussion of a box shape into the construction of "plate member." Rather, the court referred to its earlier discussion of a box shape to demonstrate, by analogy, that its construction of plate member did not contemplate a structure containing angles as great as 90 degrees. That is, the court was noting that it had already rejected a similar attempt by Plaintiff to construe "plate member" as including a structure containing walls that formed 90-degree angles with an upper planar sheet. Plaintiff's expert contends that structures containing 90-degree angles can be considered plates, but this argument is merely an attempt to re-argue claim construction. The proper question for the infringement analysis, once the court has construed "plate member," is whether a 90-degree angle can be considered *minor*, not whether a structure containing 90-degree angles can be considered a "plate" in general. Plaintiff's expert believes that a 90-degree angle could be considered minor if it does not negatively affect the function of the component. (Johnson Decl. ¶ 54.) Under the court's claim construction ruling, however, "minor" referred to the size of the angles, not to their functional significance. *See Not Dead Yet*, 2015 WL 5829761, at *6 (referring to evidence from prior art that plate member may be "*slightly* angled or otherwise curved," and distinguishing sheet that is "entirely straight" from sheet containing "minor curves"). The court, therefore, found no support for Plaintiff's contention that the QD1's C-channel could constitute a "plate member" as the court had construed the term. Because Plaintiff's challenge to the court's reasoning does not provide an adequate basis to grant a motion to reconsider, the court adheres to its prior ruling on this issue.

## IV. Infringement of the '432 Patent by the QD1 under the Doctrine of Equivalents

Though the court concluded that the QD1 does not literally infringe claim 1 of the '432 Patent, the court also determined that a reasonable jury could find infringement under the doctrine of equivalents. Even if a product does not literally infringe a patent claim, it can infringe under the doctrine of equivalents "if each element of the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result" as the elements of the claimed invention. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1317 (Fed. Cir. 2003). Plaintiff argues that the court erred by relying on irrelevant evidence to find that a genuine dispute of material fact exists on the issue of infringement under the doctrine of equivalents. Plaintiff is correct that the court mistakenly relied on evidence it had already determined to be irrelevant. In its summary judgment ruling, the court determined that there was a genuine dispute about whether the QD1's "shoe bracket" functions in substantially the same way as the plate member claimed in the '432 Patent. *See Not Dead Yet*, 265 F. Supp. 3d at 826. Specifically, the court pointed to the parties' disagreement about whether each structure requires a pin to prevent vertical and longitudinal movement. *Id.* The court had already determined previously, however, that whether a pin is necessary to secure the QD1 when it is *not in use* is irrelevant. *See Not Dead Yet Mfg., Inc. v. Pride Sols., LLC*, 222 F. Supp. 3d 657, 666 (N.D. Ill. 2016). Defendants cite no evidence to support a contention that the QD1 can be function without a pin when *in use*, and the court was therefore mistaken to identify this issue as creating a genuine dispute of material fact between the parties.

In spite of this mistake, the court is not inclined to reconsider its denial of summary judgment on the issue of infringement under the doctrine of equivalents. "The test of the equivalence of a proposed substitute for a missing element is ordinarily a factual inquiry reserved for the finder of fact." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). Plaintiff asks this court to grant summary judgment in its favor under the doctrine of equivalents, but Plaintiff has pointed to no case in which a court has found infringement under

the doctrine of equivalents as a matter of law. Even if the QD1's ability to be retained vertically without a pin does not create a genuine dispute of material fact, there are other grounds by which the jury could find that the QD1 and the invention claimed by the '432 Patent are not equivalent. Defendants identify a number of purportedly distinguishing features of the QD1, and it will be left to the finder of fact to determine, for example, whether the accused plate member supports the other claimed elements, whether pin bushings are equivalent to the claimed retention means, and whether the cylindrical rod located below the top surface of the QD1's C-channel structure is the equivalent of the claimed "cross bar" located "thereon" the plate member.

Defendants had also sought summary judgment on Plaintiff's claim that the QD1 infringes the '432 Patent under the doctrine of equivalents. The court denied that motion as well, and in doing so, Defendants note, the court did not address Defendants' "disclosure-dedication" argument. The court therefore takes this opportunity to explain briefly why it rejects that argument. According to Defendants, Plaintiff's position on the effective filing date of the '963 Patent commits it to the position that there was subject matter that was disclosed but not claimed in the '432 Patent. Defendants note, for example, that Plaintiff maintains that it disclosed a "support member" element in the application for the '432 Patent, even though it did not claim that element until it applied for the '963 Patent. Plaintiff is therefore precluded from claiming infringement under the doctrine of equivalents, Defendants argue, because "a patent applicant who discloses but does not claim subject matter has dedicated that matter to the public and cannot reclaim the disclosed matter under the doctrine of equivalents." *PSC Computer Prod., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1356 (Fed. Cir. 2004). As the court understands the disclosure-dedication bar, however,
he alleged disclosure must be more obvious than the disclosure Plaintiff contends it made in this case. Indeed, "before unclaimed subject matter is deemed to have been dedicated to the public, that unclaimed subject matter must have been *identified by the patentee as an*

15

*alternative to a claim limitation*." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005) (emphasis added). Defendants point to no such identification on the part of Plaintiff, and their disclosure-dedication argument therefore fails.

## V. Inequitable Conduct in Plaintiff's Prosecution of the '963 Patent

Plaintiff contends that by denying Plaintiff's motion for summary judgment on Defendants' inequitable conduct defense, the court ignored controlling precedent. The court determined that a jury could reasonably infer from the evidence presented that Plaintiff or its counsel acted with deceptive intent by intentionally failing to disclose certain prior art in the prosecution of the application for the '963 Patent.[5] Plaintiff contends that the court should have granted summary judgment on the inequitable conduct defense because it determined that a "jury could accept Shoup's [Plaintiff's president] that he always intended to claim priority to the '432 Patent." *Not Dead Yet*, 265 F. Supp. 3d at 837. Under the law of the Federal Circuit, "when there are multiple reasonable inference that may be drawn, intent to deceive cannot be found." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–91 (Fed. Cir. 2011).

But even under *Therasense*, it is not the case, as Plaintiff appears to suggest, that a court must either grant summary judgment on inequitable conduct for the patent challenger (because deceptive intent is the only reasonable inference to be drawn) or grant summary judgment for the patentee (because more than one reasonable inference is possible). It is still possible for facts to "preclude summary judgment on the issue of deceptive intent." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1351 (Fed. Cir. 2013). As the court discussed in its

---

[5] In a footnote, Plaintiff says that it was improper for the court to consider Defendants' argument that deceptive intent could be inferred from the fact that it would be contrary to Plaintiff's interest to claim priority to application for the the '432 Patent when it first filed the application for the '963 Patent. *See Not Dead Yet*, 265 F. Supp. 3d at 824. Plaintiff notes that Defendants never questioned Kenneth Shoup, Plaintiff's president, about whether it would have been in his interest to claim priority at that time. But Defendants' argument is not based on speculation or conjecture, as Plaintiff contends, but on an inference from the way patent law works about what would have been to Shoup's advantage at the time. Whether or not Defendants asked Shoup that question, Plaintiff was free to respond to the point in its brief and will be free to argue at trial that Shoup *did* have some reason to claim priority to the application for the '432 Patent.

16

opinion, a finder of fact could credit Shoup's assertion that he did not intend to mislead the United states Patent and Trademark Office (PTO) and always intended to claim priority to the '432 Patent, which would explain the failure to disclose prior art. But when viewed in the light most favorable to Defendants, the evidence is sufficient to support a finding that deceptive intent is the single most reasonable inference. *See id.* ("evidence would support a finding of intent that is the single most reasonable inference to be drawn" where patentee "withheld various pieces of material information and had no reasonable explanation for the several misrepresentations it made"). The court did not misapply *Therasense* and adheres to its denial of Plaintiff's motion for summary judgment on this issue.

Plaintiff had also moved to dismiss Defendants' inequitable conduct defense as inadequately pleaded and maintains that the court erred in denying that motion. Plaintiff contends that in their answer to Plaintiff's complaint, Defendants did not adequately allege that Plaintiff had the specific intent to deceive the PTO. Instead, Plaintiff contends, Defendants merely alleged that Plaintiff acted "intentionally or through gross negligence"; but allegations of gross negligence are inadequate to support an inequitable conduct defense. The court thus committed manifest error, Plaintiff argues, by mentioning the motion to dismiss only in a footnote. Plaintiff requests a more detailed justification of the court's denial of the motion to dismiss "for purposes of appeal." (Pl.'s Br. at 14.) The court provides that explanation here: As discussed above, the court has determined that Defendants have produced sufficient evidence to support a finding by a reasonable trier of fact that Plaintiff or its counsel engaged in inequitable conduct and acted with specific intent to deceive the PTO. To the extent Defendants' pleading is deficient, either because it contains insufficient detail or leaves open the possibility that Plaintiff acted through gross negligence rather than intentionally, the court could strike Defendants' answer without prejudice, but would then permit Defendants to file an amended pleading that omits the reference to gross negligence and incorporates the evidence offered in response to Plaintiff's motion for summary judgment. *See* FED. R. CIV. P. 15

17

(permitting amendment of pleadings before, and even during or after, trial). This would be an exercise in pointless formalism that would only waste time and resources. Defendants have produced evidence to support their inequitable conduct defense, and Plaintiff has failed to show how it is prejudiced at this stage by any purported inadequacy in the Defendants' pleading. Indeed, the fact that the parties fully briefed this issue at the summary judgment stage effectively renders moot any debate about the sufficiency of Defendants' pleading. The court therefore stands by its prior denial of Plaintiff's motion to dismiss.

## VI. False Advertising under the Lanham Act

Plaintiff contends that whether a statement made in an advertisement is literally false is an issue of fact to be determined at trial. It argues that the court erred, therefore, by determining as a matter of law that the alleged statements in Defendants' advertisements were at least ambiguous and thus not literally false. If a statement is not literally false, a party must produce evidence of actual consumer confusion to prevail on a claim for false advertising under the Lanham Act. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 972 (7th Cir. 1999). Plaintiff did not produce any evidence of actual consumer confusion, and the court therefore granted summary judgment for Defendants on the Lanham Act claim. Plaintiff argues that the court's ruling conflicts with Seventh Circuit law. *See Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032, 1034 (7th Cir. 2000) ("[W]hether a claim is either 'false' or 'misleading' is an issue of fact rather than law."). But the court sees no obvious inconsistency between its ruling and *Mead Johnson*. Even if a dispositive issue is a question of fact, a court may still grant summary judgment if there is no genuine dispute about that fact—that is, if the evidence (or lack thereof) would not allow a reasonable jury to return a verdict for the nonmoving party on that issue. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Had Plaintiff produced sufficient evidence to allow a trier of fact to conclude that Defendants' statements were false or misleading, the ultimate issue of whether the statements were false or misleading would be an issue of fact to be determined at trial. The Seventh Circuit

appears to recognize that a district court may make the initial determination regarding a statement's ambiguity and the need for evidence of actual consumer confusion. *See Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009) ("[A] plaintiff] cannot just intone 'literal falsity' and by doing so prove a violation of the Lanham Act."); *id.* ("A 'literal' falsehood is bald-faced, egregious, undeniable, over the top."). Determining whether a statement is clear or ambiguous is the type of exercise that courts routinely conduct, and other authority suggests that that determination is properly made as a matter of law. *See, e.g.*, *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 615 n.2 (6th Cir. 1999) ("[T]he initial determination concerning whether a statement is ambiguous is a matter of law, while the determination as to whether facts exist so as to justify the statement is a question of fact."); *see also Cont'l Datalabel, Inc. v. Avery Dennison Corp.*, No. 09 C 5980, 2012 WL 5467667, at *5 (N.D. Ill. Nov. 9, 2012) (Feinerman, J.) (determining as a matter of law that statements were ambiguous, and thus requiring evidence of actual consumer confusion, where no reasonable jury could find that statements met standard for literal falsity).

    In any event, the court determined that Plaintiff failed to establish it was likely to suffer any injury as a result of Defendants' advertising, and Plaintiff has not asked the court to reconsider that determination. The absence of demonstrated injury provides an alternative basis for granting summary judgment on Plaintiff's Lanham Act claims. As the court noted with respect to Plaintiff's state-law false advertising claims, Plaintiff presented no evidence, or argument, that Defendants' allegedly misleading statements (purportedly asserting that its stalk stomper product was the "original" stalk stomper product) would have any effect on consumers' purchasing decisions. That lack of evidence also dooms Plaintiff's claims under the Lanham Act. One element of a false advertising claim under the Lanham Act is materiality—that is, the subject of the allegedly misleading statement must be "material to the decision to purchase the goods." *B. Sanfield*, 168 F.3d at 971; *see also Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d

591, 618 (S.D.N.Y. 2012) (granting summary judgment on Lanham Act claim based on lack of evidence that statement was false in a way that is likely to influence consumer behavior); *Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F. Supp. 2d 1360, 1380 (N.D. Ga. 2010) (plaintiff must establish materiality even if alleged advertisement is literally false). Thus, even if the court improperly relied on a finding of fact to grant summary judgment in its prior ruling, it would nevertheless adhere to the conclusion that Defendants are entitled to summary judgment on Plaintiff's Lanham Act claim.

## **CONCLUSION**

For the reasons stated above, the court clarifies that the effective filing date of the '963 Patent is an issue of fact to be determined at trial and therefore strikes Defendants' motion for partial summary judgment [176] but otherwise denies Plaintiff's motion for reconsideration [183].

ENTER:

Date: February 2, 2018

_____
REBECCA R. PALLMEYER
United States District Judge

<mark>20</mark>